### 20584

James P. STEVENS, Respondent, v. The SUN PUBLISHING COM-
PANY, Appellant.

(240 S. E. (2d) 812)

*William L. Pope,* of *Robinson, McFadden, Moore & Pope,* Columbia, and *McCutcheon & McCutcheon,* of Conway, and *Wahl & Gabel,* Jacksonville, Fla., *for Appellant,*

*J. M. Long, Jr.,* of Conway, *for Respondent,*

January 18, 1978.

Ness, Justice:

This appeal is from a jury verdict of $50,000.00 actual damages rendered in a libel suit instituted by respondent James P. Stevens against appellant, The Sun Publishing Company. We affirm.

Respondent Stevens served as State senator for Horry County from 1955 to 1976. The Sun Publishing Company owns and publishes two newspapers, The Field and Herald and The Sun News, in which the allegedly libelous articles appeared.

Stevens was one of seven stockholders of Sandy Island Corporation which purchased approximately 4,000 acres of Sandy Island in Georgetown County in 1964. Among the other stockholders were the Chairman of the Horry County Airport Commission, the Mayor of North Myrtle Beach, and respondent's brother, Tommie Stevens a/k/a Thomas McDuffie McLeod.

Four of the seven stockholders of Sandy Island Corporation, including Tommie Stevens, subsequently formed Sandy Island Development Corporation to develop a portion of the island purchased from Sandy Island Corporation. Respondent was *not* a stockholder of the development corporation.

The allegedly libelous articles concerned respondent's involvement with Sandy Island and the activities of his brother Tommie.

During dredging operations performed by the development corporation, controversy arose between the U. S. Corps of Engineers and the Corporation. A cease and desist order was issued by the Corps to halt allegedly unlawful dredging operations, but was voided by a federal judge. As a result of this litigation and the general interest in tidelands matters in the area, public interest was generated in the events surrounding Sandy Island's development.

The allegedly libelous article reprinted in the transcript of record from The Sun News was entitled "Sandy Island Purchase Start of Legal Tangle." Apart from providing a general history of the pertinent Sandy Island activities, the article discussed the involvement of respondent's brother, Tommie Stevens in the venture. Characterizing him as "a colorful Florida ex-millionaire," the article referred to Tommie Stevens' "hazy background" of business dealings. The following excerpt from the Tampa Tribune, quoted in The Sun News article is a representative sample of the overall tenor of the description of respondent's brother:

"Tampa businessman wheeler-dealer Tom McLeod, 54, who came to town in 1967, left last month with a figurative suitcase full of thousand dollar bills, apparently from last minute business dealings which are being legally questioned." (Tr. p. 219).

The article also explored McLeod's (nee Stevens') marital problems. His ex-wife, Marlene McLeod, was quoted at length, not only with respect to her former husband but also regarding his relationship with respondent. Ms. McLeod referred to her ex-husband as "an incredible con man and business manipulator who had ruined many people's lives." She made the following comments about McLeod's relationship with respondent:

"James (Stevens) has had nothing but headaches from his brother . . . James will do pretty much as Tom tells him. Tom uses James." (Tr. p. 221). Thus the article implied Senator Stevens was being manipulated by his con-man brother. It also incorrectly stated respondent was being sued for abuse of political power.

The exceptions raised by appellant all relate to the denial of its motion for judgment *non obstante veredicto*. Appellant asserts the publications were not defamatory of respondent and were protected under the First and Fourteenth Amendments to the U. S. Constitution and by Article 1, Section 1 of the South Carolina Constitution.

██ Pursuant to *Townes Associates, Ltd. v. City of Greenville*, 266 S. C. 81, 85, 221 S. E. (2d) 773, 775 (1976), our scope of review in a case of this nature is limited. As we stated in *Townes*,

"1. In an action at law, on appeal of a case tried by a jury, the jurisdiction of this Court extends merely to the correction of errors of law, and a factual finding of the jury will not be disturbed unless a review of the record discloses that there is no evidence which reasonably supports the jury's findings. *Odom v. Weathersbee*, 225 S. C. 253, 81 S. E. (2d) 788 (1954)."

Moreover, under settled principles, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the party opposing the motion for judgment *N.O.V. Graham v. Suggs et al.*, S. C., 239 S. E. (2d) 644 (1977); also see decisions collected in 3 S. C. Digest, Appeal & Error, Key 933(1).

█ Upon so viewing the evidence, we find the jury's verdict to be supported by the record. There is ample testimony which, if believed, would satisfy the actual malice requirement of *New York Times v. Sullivan*, 376 U. S. 254, 84 S. Ct. 710, 11 L. Ed. (2d) 686 (1964), which established the law of defamation on a broad principled First Amendment basis.

However, appellant asserts a publisher of an allegedly defamatory statement is entitled under the First Amendment to a *de novo* review of the entire record on appeal. This contention is based on *Rosenbloom v. Metromedia, Inc.,* 403 U. S. 29, 91 S. Ct. 1811, 1825, 29 L. Ed. (2d) 296 (1971), where the Court stated "First Amendment questions of 'constitutional fact' compel this Court's *de novo* review." While at least one court [1] has agreed with appellant's interpretation that the above language imposes a *de novo* scope of review on *all* appellate courts, we find it unnecessary to rule on that question.

Assuming, without deciding, appellant is entitled to a *de novo* review of the record by this Court, judgment would still be rendered for respondent. An individual's status as a public figure does not immunize a publisher from liability when it prints defamatory articles with malice. Adhering to the Court's two-pronged definition of malice in *New York Times, supra,* we believe appellant published the instant articles with reckless disregard of the falsity of their contents.

John Monk, the author of the allegedly libelous articles, used the respondent's former sister-in-law, Marlene McLeod as one of his primary sources. Monk admitted recognizing Ms. McLeod's obvious bias. As was stated in *St. Amant v. Thompson,* 390 U. S. 727, 88 S. Ct. 1323, 1326, 20 L. Ed. (2d) 262, 267 (1968):

"[R]ecklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports."

Further evidence of actual malice was supplied by the witness Davis Heniford. Heniford stated Monk told him he had something "juicy" to print about respondent, and that Monk admitted to him the Sun News did not like James Stevens. Heniford testified he told Monk that Marlene Mc-

---

[1] See *Fadell v. Minneapolis Star & Tribune Company, Inc.,* 557 F. (2d) 107 (7th Cir. 1977).

Leod's information was biased, unreliable, and untrue, and that publication of the article would damage respondent. Despite this admonition, Monk printed the article without further investigation.

In *Curtis Publishing Company v. Butts,* 388 U. S. 130, 87 S. Ct. 1975, 18 L. Ed. (2d) 1094 (1967), the Supreme Court found "reckless disregard" where the defamatory matter was not "hot news" and was published on the basis of information garnered from a source known to be suspect. As in this case, the story was printed without substantial independent support.

The article concerning Senator Stevens was not "hot news" and was printed despite warnings to its author concerning its falsity. We believe actual malice is established when reporters and publishers depart from responsible standards of investigation and print articles on the basis of an admittedly unreliable source, without further verification.[2]

As was stated in *Gertz v. Welch, Inc.,* 418 U. S. 323, 94 S. Ct. 2997, 41 L. Ed. (2d) 789:

"[T]here is no constitutional value in false statements of facts. Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues."

Accordingly, this Court declines to extend constitutional protection to articles containing blatantly false statements and opinions of a biased informant which imply improper conduct by a public official.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, RHODES and GREGORY, JJ., concur.

---

2 Reporter Monk admitted on cross-examination that he had only spoken once by telephone with Marlene McLeod prior to writing the article. (T. p. 173). He also conceded he sought no independent verification of her statement that respondent was being used by Tommie Stevens. (T. p. 176).