635 S.E.2d 640

**Robert William METTS, Respondent/Appellant,**

v.

**Judy MIMS, Berkeley Independent Publishing Company, Inc. d/b/a The Berkeley Independent and Summerville Communications, Inc. d/b/a The Goose Creek Gazette, Defendants,**

Of Whom Berkeley Independent Publishing Company, Inc. d/b/a The Berkeley Independent and Summerville Communications, Inc. d/b/a The Goose Creek Gazette are the, Appellants/Respondents.

**No. 4148.**

Court of Appeals of South Carolina.

Heard May 9, 2006.

Decided Aug. 14, 2006.

Rehearing Denied Sept. 20, 2006.

530

John J. Kerr, of Charleston, for Appellants–Respondents.

Edward Paul Gibson, of North Charleston and Steve Frederick DeAntonio, of Charleston, for Respondent–Appellant.

HEARN, C.J.:

In this action for libel, Robert Metts, the Deputy Assistant Administrator of Berkley County, appeals the order of the circuit court granting Berkley Independent Publishing and Summerville Communications (Newspaper) summary judgment. Additionally, Newspaper appeals from the order requiring it to produce financial information, and Metts appeals from an order declining to impose sanctions upon Newspaper after it refused to comply with the discovery order. We affirm.

## FACTS

On July 30, 2003, Newspaper published an article entitled "It was helpful, but was it legal?" The story centered around a controversial work policy established by Metts's boss, County Supervisor Jim Rozier, which allowed county employees to perform yard work on private property. The article questioned whether the policy violated the state constitution. According to the article, county council member Judy Mims stated: "[A] constituent called [her] ... about seeing county trucks in Robbie Metts' driveway in Pinopolis, and employees cutting limbs from trees in his yard."

On the day Newspaper published the article, Mims called the reporter who wrote the story and claimed she had not made the statement which the article attributed to her. Al-

though the reporter still believed Mims made the statement, Newspaper agreed to print a correction. The correction stated: "Mrs. Mims told The Independent she would like to correct [the previous statement] to say that constituents told her they had seen county trucks in [Metts's] yard." The correction further stated that "Metts told The Independent that what was reported 'was not the least bit accurate.'" Metts was extremely upset by the article's implication he was utilizing county employees without paying the county a fee for the services.

Metts brought suit against Newspaper and Mims alleging libel, civil conspiracy, and invasion of privacy. The complaint sought actual and punitive damages. During discovery, Metts served Newspaper with a request for production of its financial records. Newspaper refused to produce the documents on the ground that the records were only relevant to the issue of punitive damages, which Newspaper considered would most probably not go to a jury. In response to Metts's motion to compel, Judge Deadra Jefferson ordered Newspaper to produce the financial information.

Newspaper continued to refuse to produce its financial records, so Metts moved to have Newspaper held in contempt. Before the contempt hearing was held, Newspaper filed a motion for summary judgment on the grounds that Metts was a public official and there was no evidence Newspaper acted with constitutional malice in publishing the article.

Judge R. Markely Dennis, Jr., presided over the motion hearing. Newspaper contended that it was unlikely the financial records would ever be needed because Metts could not prove constitutional malice. Newspaper maintained that if it complied with the discovery order it would lose its right to appeal because the issue would be moot. Newspaper, therefore, believed it had no choice but to have the court find it in contempt so it could appeal the order. Judge Dennis agreed, finding Newspaper had the right to challenge the order. Accordingly, Judge Dennis held Newspaper in contempt but imposed no sanctions.[1] At the hearing, Judge Dennis also orally held Newspaper's motion for summary judgment in abeyance until the contempt issue was resolved. Judge Den-

1. Judge Dennis also ruled Metts was a public official.

nis changed his mind, however, and issued a formal written order allowing Newspaper to proceed with its motion for summary judgment.

Thereafter, Judge Roger Young heard Newspaper's motion for summary judgment. Metts argued that Newspaper was aware of the adversarial relationship between Mims and Metts's supervisor, Jim Rozier. Further, Metts contended the reporter responsible for the article had received a government document listing the officials who had used county employees to perform lawn work at their houses, and that document did not have Metts's name on it. Therefore, Metts asserted that Newspaper's failure to investigate the story before publishing the article when the reporter had sufficient reason to doubt the veracity of Mims's statement constituted actual malice. For purposes of summary judgment, Newspaper conceded that Mims's statement was false, but maintained the position that the reporter believed the statement to be true.

Judge Young found that in order for Metts to prevail on summary judgment, he needed to establish that Newspaper made the publication with knowledge that it was false or with reckless disregard as to the statement's truthfulness. Taken in the light most favorable to Metts, Judge Young found no evidence suggested the reporter purposefully failed to investigate why Metts's name was not included on the list. Judge Young found Metts failed to establish clear and convincing evidence allowing a trier of fact to find that Newspaper was aware the contested quote was false, or that it acted with reckless disregard as to the truth of Mims's allegations. Accordingly, Judge Young granted Newspaper's motion for summary judgment. Both Newspaper and Metts appeal.

Newspaper argues the trial court erred in requiring it to produce private financial information without any evidentiary showing that Metts was entitled to it. Metts appeals the circuit court's failure to impose sanctions when Newspaper refused to comply with the discovery order. Metts also claims the circuit court erred by allowing Newspaper's motion for summary judgment to proceed, after initially holding the matter in abeyance pending the contempt order's appeal. Finally, Metts appeals the circuit court's order granting News-

paper's motion for summary judgment on his defamation claim.

## STANDARD OF REVIEW

"The purpose of summary judgment is to expedite disposition of cases which do not require the services of a fact finder." *George v. Fabri*, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). When reviewing the grant of a summary judgment motion, this court applies the same standard which governs the circuit court under Rule 56(c), SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002).

Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings. *Peterson v. West American Ins. Co.*, 336 S.C. 89, 94, 518 S.E.2d 608, 610 (Ct.App.1999). Rather, the nonmoving party must come forward with specific facts showing there is a genuine issue for trial. *Regions Bank v. Schmauch*, 354 S.C. 648, 660, 582 S.E.2d 432, 438 (Ct.App.2003).

## LAW/ANALYSIS

■ First, Metts argues the trial court erred in allowing Newspaper's motion for summary judgment to proceed after initially holding the summary judgment motion in abeyance pending the resolution of the contempt order. We disagree.

■ South Carolina law is well-settled that until an order is entered by the clerk of court, the trial court retains control of the case. *See Upchurch v. Upchurch*, 367 S.C. 16, 22–23, 624 S.E.2d 643, 646 (2006) ("An order is not final until it is entered by the clerk of court; and until the order or judgment is entered by the clerk of the court, the judge retains control of the case."); *Bowman v. Richland Mem'l Hosp.*, 335 S.C. 88, 91, 515 S.E.2d 259, 260 (Ct.App.1999) ("An order is not final until it is written and entered by the clerk of court. Until an order is written and entered by the clerk of court, the judge

retains discretion to change his mind and amend his ruling accordingly."). Therefore, the oral ruling from the bench was not binding upon the parties. Accordingly, the circuit court did not err by ordering the summary judgment motion to proceed. In the interest of judicial economy, it made sense to allow the summary judgment motion to go forward because if the motion was resolved in favor of Newspaper, there would be no reason for Newspaper to produce its financial records to Metts.

Next, Metts argues there is ample evidence in the record of Newspaper's actual malice and therefore the trial court erred in granting summary judgment.[2] We disagree.

■ There is no dispute that Metts, the Deputy Assistant Administrator of Berkley County, is a public figure. In a defamation case involving a public figure or official, the complaining party must prove, by clear and convincing evidence, "actual malice," i.e., that the defendant published the defamatory statement with either the knowledge it was false or with a reckless disregard as to whether it was false. *Anderson v. Augusta Chronicle*, 365 S.C. 589, 619 S.E.2d 428 (2005) (citing *George v. Fabri*, 345 S.C. 440, 451, 548 S.E.2d 868, 874 (2001)).

■■ In deciding whether actual malice exists in a given case, we note " 'the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term.' " *George*, 345 S.C. at 456, 548 S.E.2d at 876 (quoting *Harte–Hanks Communications., Inc. v. Connaughton*, 491 U.S. 657, 666, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989)). Further, as the South Carolina Supreme Court reiterated in *Anderson*, failure to investigate in and of itself is insufficient to establish that a defendant " 'recklessly disregarded' the falsity of a published article." 365 S.C. at 598, 619 S.E.2d at 431. *See also George*, 345 S.C. at 456, 548 S.E.2d at 876 ("[T]he reckless conduct contemplated by the *New York Times* [*Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)] standard 'is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing.' ") (citations omitted).

---

2. For purposes of summary judgment, we will assume the statement was false and defamatory.

Rather, the actual malice standard is governed by a subjective standard that tests a defendant's good faith belief in the truth of the published statement. *Elder v. Gaffney Ledger*, 341 S.C. 108, 114, 533 S.E.2d 899, 902 (2000). Additionally, South Carolina has declined to impose rigorous investigatory duties for members of the press. *Anderson*, 365 S.C. at 596, 619 S.E.2d at 431. Therefore, in order to establish recklessness there must be an "extreme departure from the standards of investigation and reporting ordinarily adhered to by reasonable publishers." *Id.* (citing *Peeler v. Spartan Radiocasting, Inc.*, 324 S.C. 261, 266, 478 S.E.2d 282, 285 (1997)). The complaining party must show sufficient evidence to conclude that "the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968).

Metts argues the reporter's knowledge of the adversarial relationship between Mims and Metts's supervisor, coupled with the fact that Metts's name was not included in the official list of people who had county employees perform work at their homes put the reporter on notice that further inquiry into the matter was required. Metts asserts the reporter's failure to investigate the conflicting information and instead, proceeding with publication establishes actual malice by clear and convincing evidence.

Viewing the evidence in the light most favorable to Metts, the reporter's testimony reveals the following about her subjective belief about Mims's statement: (1) Mims made the statement to the reporter at 11:30 a.m.; (2) the reporter knew Mims and Rozier did not get along and that Metts worked for Rozier; and (3) the reporter believed she had no reason to doubt Mims's statement because Mims was a county official speaking about a county policy. The record also reveals that Newspaper received the official document at 4:30 p.m. and that the paper had been held from going to press until the list could be included in the publication.

We hold the evidence yields only one conclusion—that the reporter subjectively believed the truth of Mims's statement. Metts correctly argues that the subjective awareness of probable falsity can be shown "if there are *obvious* reasons to doubt the veracity of the informant or the accuracy of his reports."

*Anderson,* 365 S.C. at 596, 619 S.E.2d at 432 (emphasis added). However, simply because the reporter was aware that Mims and Metts's supervisor were political adversaries does not mean the reporter had obvious reasons to doubt Mims's credibility as a source of information.

In short, Metts's claim of actual malice in this case hinges on the reporter's failure to investigate Mims's story after receiving a document that apparently contradicted Mims's statement. Newspaper is a small weekly publication, and the evidence reveals the reporter received the list a few hours before the deadline for submitting final articles. We agree with the circuit court that the evidence indicates the reporter failed to investigate due to time constraints and a number of other obligations, including numerous editorial and administrative tasks. Although the reporter's actions may have been negligent, we cannot say that they constituted an extreme departure from the standards of investigation normally employed by publishers so as to rise to the level of constitutional actual malice. *See also Elder,* 341 S.C. at 118–19, 533 S.E.2d at 904 (finding that failure to investigate an anonymous phone call prior to publishing plus testimony that editor possibly harbored some ill will toward plaintiff was "patently insufficient" to establish actual malice).

Because we find the circuit court properly granted summary judgment in favor of Newspaper, we need not address any issues involving the contempt order. *See Jarrell v. Petoseed Co.,* 331 S.C. 207, 209–10, 500 S.E.2d 793, 794 (Ct.App.1998) ("Civil contempt proceedings designed to coerce compliance generally terminate along with the termination of the main action.") (citations omitted).

## CONCLUSION

For the foregoing reasons, the circuit court's decision is

**AFFIRMED.**

GOOLSBY and ANDERSON, JJ., concur.