682 S.E.2d 813

**Robert William METTS, Petitioner,**

v.

**Judy MIMS, Berkeley Independent Publishing Company, Inc. d/b/a The Berkeley Independent and Summerville Communications, Inc. d/b/a The Goose Creek Gazette, Defendants,**

**Of Which Berkeley Independent Publishing Company, Inc. d/b/a The Berkeley Independent and Summerville Communications, Inc. d/b/a The Goose Creek Gazette are the Respondents.**

No. 26712.

Supreme Court of South Carolina.

Heard Oct. 8, 2008.

Decided Aug. 31, 2009.

Rehearing Denied Oct. 7, 2009.

492

494

E. Paul Gibson, of Charleston, and Stephen F. DeAntonio, of DeAntonio Law Firm, of Charleston, for Petitioner.

John J. Kerr, of Buist, Moore, Smythe & McGee, of Charleston, for Respondents.

Justice WALLER.

We granted certiorari to review the Court of Appeals' opinion in *Metts v. Mims*, 370 S.C. 529, 635 S.E.2d 640 (Ct.App.2006). The Court of Appeals in *Metts* affirmed an order granting summary judgment to respondents (Newspapers), and therefore did not address the cross-appeals from the contempt order. We affirm petitioner's issues related to the discovery order, reverse the summary judgment decision, and remand back to the Court of Appeals for resolution of Newspapers' appeal regarding the contempt order.

## FACTUAL/PROCEDURAL BACKGROUND

Petitioner Robert William Metts is the Deputy County Supervisor of Berkeley County. On July 30, 2003, Newspapers each published a front-page article with the headline: "It was helpful, but was it legal?" The article discussed a controversial work policy instituted by County Supervisor Jim Rozier which allowed county employees to work on private property in competition with private businesses. In the story, defendant Judy Mims[1] was quoted as saying that county employees had been seen performing yard work on petitioner's private property.[2]

Petitioner sued Newspapers claiming that the statements in the article were defamatory because they suggested he was improperly benefiting from the services of county employees. According to petitioner, he had yard work performed by private companies and never utilized county employees. Petitioner further contended that defendant Mims fabricated the

---

1. Mims, who was a county councilwoman at the time, is now deceased.

2. After the story was published, Mims called the reporter and denied having made the statement attributed to her about petitioner; one of the Newspapers printed a correction. Petitioner alleges, however, that while the correction included his own denial of what was reported, it essentially reiterated the objectionable statement from Mims.

story because she had a "longstanding vendetta" against petitioner's supervisor, Rozier, who is an elected official.

During the discovery phase of the lawsuit, petitioner sought to obtain Newspapers' financial information for use in the punitive damages portion of trial. When Newspapers declined to provide the information, petitioner obtained an order compelling its production. Newspapers subsequently sought a contempt order to permit them to immediately appeal the discovery order. *See, e.g., Tucker v. Honda of South Carolina Mfg.,* 354 S.C. 574, 577, 582 S.E.2d 405, 406–07 (2003) ("an order compelling discovery may be appealed only after the trial court holds a party in contempt"). The trial court issued the contempt order, but declined to impose any sanctions. Both petitioner and Newspapers filed appeals from the contempt order.

After the contempt order was issued, the trial court heard Newspapers' summary judgment motion. The trial court granted summary judgment in favor of Newspapers finding that petitioner failed to meet his burden of producing clear and convincing evidence that Newspapers acted with constitutional actual malice. *See Fleming v. Rose,* 350 S.C. 488, 567 S.E.2d 857 (2002) (libel plaintiff who is a public figure must produce clear and convincing evidence of actual malice in order to withstand defendant's summary judgment motion).

Petitioner timely appealed from the trial court's order granting summary judgment. The appeals from the trial court's orders were consolidated for review. The Court of Appeals affirmed the summary judgment order and further held that this affirmance mooted the cross-appeals from the contempt order. *Metts, supra.* We granted petitioner's request for a writ of certiorari.

## ISSUES

I. Did the Court of Appeals err in holding that the trial court had the authority to rule on Newspapers' summary judgment motion?

II. Did the Court of Appeals err in declining to address the merits of petitioner's appeal from the contempt order?

III. Did the Court of Appeals err in affirming the grant of summary judgment?

## DISCUSSION

### I.

Petitioner argues the trial court lacked jurisdiction to consider the summary judgment motion because he had filed an appeal from the contempt order **before** the order granting summary judgment was filed. Resolution of this argument requires a review of the following timeline of events:

*August 25, 2004:* Judge Jefferson issues discovery order compelling Newspapers to provide the financial information sought by petitioner.

*December 22, 2004:* Newspapers move for summary judgment.

*March 8, 2005:* Judge Dennis hears contempt action filed by petitioner when Newspapers decline to comply with Judge Jefferson's August 2004 discovery order.

*March 8, 2005:* **Unsigned** Form 4 order is filed, finding Newspapers in contempt and holding summary judgment motion in abeyance. The form also states: "Formal order to follow."

*April 7, 2005:* The Berkeley Count Clerk of Court asks the parties to disregard/destroy the unsigned Form 4 order dated March 8, 2005. This memorandum indicates the request is "a follow-up to previous conversations."

*April 28, 2005:* Judge Dennis issues order on March contempt hearing, finding Newspapers in contempt, but imposing no sanctions. The trial court also states that Newspapers' summary judgment motion should be rescheduled for hearing but stays trial pending that hearing. This order was filed at 4:56 p.m. on April 29, 2005.

*April 29, 2005:* Judge Young hears Newspapers' summary judgment motion.

*May 27/June 2, 2005:* Newspapers and petitioner appeal Judge Dennis's order holding Newspapers in contempt but refusing to impose any sanctions.

*June 20, 2005:* Judge Young issues an order granting Newspapers summary judgment.

■ According to petitioner, the trial court lacked jurisdiction to consider the summary judgment motion because he had appealed Judge Dennis's contempt order on June 2, 2005, before Judge Young's order granting summary judgment was filed on June 20, 2005. We disagree.

■■ Initially, we note that petitioner couches this argument as one involving the trial court's subject matter jurisdiction. Generally speaking, subject matter jurisdiction is the power to hear and determine cases of the general class to which the proceedings in question belong. *E.g. Dove v. Gold Kist, Inc.*, 314 S.C. 235, 442 S.E.2d 598 (1994). Circuit courts have jurisdiction over general tort cases, such as the instant defamation case. *See Sabb v. South Carolina State Univ.*, 350 S.C. 416, 422, 567 S.E.2d 231, 234 (2002). Accordingly, petitioner's "subject matter" jurisdiction claim is inapposite.

■ Petitioner also cites Rule 205, SCACR, in support of his argument. Pursuant to Rule 205, the service of a notice of appeal gives the appellate court **exclusive** jurisdiction over the appeal. Nonetheless, this rule also provides that a trial court may proceed "with matters not affected by the appeal." Here, the contempt order resulted from Newspapers' refusal to comply with a discovery order compelling it to provide financial data relevant to petitioner's punitive damages claim. Newspapers' motion for summary judgment, however, was on the merits of petitioner's libel claim. We find the summary judgment matter was unaffected by the appeal of the contempt order. *Cf. Grosshuesch v. Cramer*, 377 S.C. 12, 31 n. 7, 659 S.E.2d 112, 122 n. 7 (2008) (where the Court noted that the trial court properly ruled on a second discovery matter involving a deposition after the parties had filed appeals from the trial court's first order because the first order dealt with the subject of initial discovery responses). The trial court's ruling on the constitutional actual malice issue was clearly unrelated to the discovery dispute involving the Newspapers' financial data. Thus, the trial court properly proceeded on the summary judgment motion, despite the pending appeal on the contempt order. Rule 205, SCACR.

■ Petitioner further contends that because Judge Dennis orally held the summary judgment motion in abeyance, and this was memorialized in the unsigned Form 4 order filed in

March 2005, Judge Young was unauthorized to hold the summary judgment hearing on April 29, 2005. We disagree. The Form 4 order was not signed by the judge and it specifically indicated a formal order would follow. Therefore, this form order was not in any way final. *See Culbertson v. Clemens,* 322 S.C. 20, 23, 471 S.E.2d 163, 164 (1996) (a decree leaving some further act to be done by the court is not final); *see also Cheap-O's Truck Stop, Inc. v. Cloyd,* 350 S.C. 596, 605, 567 S.E.2d 514, 518 (Ct.App.2002) (a form order is a final order only if the circuit court indicates that nothing else remains to be done after it is signed).

Finally, petitioner asserts that, as a matter of public policy, a party which has been held in contempt should not be heard by the court until the contempt has been resolved. We find this argument is unpreserved for appellate review. Although petitioner raised this argument at the summary judgment hearing, it was not addressed in the trial court's order. Petitioner then failed to include this issue in his motion for reconsideration. Accordingly, the argument is procedurally barred, and the Court of Appeals properly did not address it. *E.g., Elam v. S.C. Dep't of Transp.,* 361 S.C. 9, 24, 602 S.E.2d 772, 780 (2004) ("A party *must* file [a Rule 59(e) ] motion when an issue or argument has been raised, but not ruled on, in order to preserve it for appellate review.") (emphasis in original).

## II.

Petitioner maintains the Court of Appeals erred in failing to address his argument that Judge Dennis improperly declined to impose sanctions on Newspapers for its contempt. We disagree.

The Court of Appeals, having upheld the grant of summary judgment, declined to address the merits of the contempt cross-appeals citing *Jarrell v. Petoseed Co.,* 331 S.C. 207, 209–10, 500 S.E.2d 793, 794 (Ct.App.1998) ("Civil contempt proceedings designed to coerce compliance generally terminate along with the termination of the main action."). Regardless, where a party chooses to be held in contempt in order to immediately appeal a discovery order, it is within the discretion of the trial court to forego sanctions. *E.g., Lindsay*

*v. Lindsay,* 328 S.C. 329, 338, 491 S.E.2d 583, 588 (Ct.App. 1997) ("Even though a party is found to have violated a court order, the question of whether or not to impose sanctions remains a matter for the court's discretion."). Clearly, under the circumstances of the instant case, it was within Judge Dennis's discretion to not impose contempt sanctions on Newspapers.

## III.

Finally, petitioner argues the Court of Appeals erred in affirming the trial court's order granting summary judgment for Newspapers. Because we find there is an issue of fact regarding actual malice, we agree with petitioner that the Court of Appeals erred by upholding summary judgment.

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. For summary judgment purposes, a court must view the facts in the light most favorable to the non-moving party. *E.g., George v. Fabri,* 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). Because it is "a drastic remedy, summary judgment should be cautiously invoked so that no person will be improperly deprived of a trial of the disputed factual issues." *Baughman v. American Tel. and Tel. Co.,* 306 S.C. 101, 112, 410 S.E.2d 537, 543 (1991) (citation and internal quotation marks omitted).

In addition to the common law elements of defamation, a public figure has the constitutional burden of proving that the defendant published the alleged defamatory material with "actual malice." *Anderson v. Augusta Chronicle,* 365 S.C. 589, 594–595, 619 S.E.2d 428, 431(2005) (citing *New York Times v. Sullivan,* 376 U.S. 254, 269, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). To establish "actual malice," the plaintiff must show the defendant published the defamatory material with the knowledge it was false or with reckless disregard of whether or not it was false. *George v. Fabri,* 345 S.C. at 451, 548 S.E.2d at 874 (citing *New York Times, supra).*

 "[T]he reckless conduct contemplated by the *New York Times* standard is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *Id.* at 456, 548 S.E.2d at 876. Instead, the actual malice standard "is a subjective one—there must be sufficient evidence to permit the conclusion that the defendant actually had a 'high degree of awareness of ... probable falsity.' " *Harte–Hanks Comm., Inc. v. Connaughton,* 491 U.S. 657, 688, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989) (citation omitted). Reckless disregard "may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *St. Amant v. Thompson,* 390 U.S. 727, 732, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). Moreover, while the failure to investigate without more will not support a finding of actual malice, "the purposeful avoidance of the truth is in a different category." *Harte–Hanks Comm., Inc. v. Connaughton,* 491 U.S. at 692, 109 S.Ct. 2678.

Petitioner argues that the following evidence creates a genuine issue of fact regarding actual malice:

1. Before publishing the story, the reporter obtained from Berkeley County a list of people who had received the services from county employees pursuant to the controversial policy; petitioner's name was **not** on that list.
2. The reporter had time to change the story, but she did not.
3. The reporter did not attempt to contact petitioner for comment or verification.
4. The reporter did not ask Mims who had told Mims they observed county employees doing yard work at petitioner's property.
5. The reporter was aware that Mims and petitioner's boss, Rozier, had an adversarial relationship with one another.

Here, viewing the record in a light most favorable to petitioner, there was sufficient clear and convincing evidence to create an issue of fact on the question of actual malice. The reporter obtained information from Councilwoman Mims, who was known to be a political nemesis of petitioner's supervisor. Moreover, the information from Mims was directly contradicted by the list the reporter received because petitioner's name

was not on the list of those getting yard services from county employees. This is direct evidence that called into question the accuracy of Mims' statements. Therefore, the reporter arguably had reason to doubt Mims' veracity. *St. Amant v. Thompson, supra* (when there are obvious reasons to doubt the veracity of the informant or the accuracy of her reports, reckless disregard may be found); *see also Stevens v. Sun Publ'g Co.*, 270 S.C. 65, 72, 240 S.E.2d 812, 815 (1978) (where the Court found that actual malice can be established when reporters "print articles on the basis of an admittedly unreliable source, without further verification"). Looking at the totality of the evidence, a jury could infer reckless conduct sufficient to meet the New *York Times* standard of actual malice.

Accordingly, we hold summary judgment was improper.

## CONCLUSION

The decision of the Court of Appeals on the issue of summary judgment is reversed, but on all other issues raised by petitioner, the Court of Appeals opinion is affirmed. Because Newspapers' original appeal from the contempt order is no longer moot, we remand the matter back to the Court of Appeals.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

TOAL, C.J., BEATTY and KITTREDGE, JJ., concur.

PLEICONES, J., concurring in part and dissenting in part in a separate opinion.

Justice PLEICONES.

I concur in part and dissent in part. I agree with the majority that the circuit court had jurisdiction to rule on the summary judgment motion. I disagree, however, with the decision to reverse the Court of Appeals' decision which affirmed the circuit court's grant of summary judgment to Newspapers.

I find no evidence of actual malice here. Actual malice is not satisfied by a showing of ill will, nor is the recklessness of

a libel defendant's conduct "measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *George v. Fabri,* 345 S.C. 440, 548 S.E.2d 868 (2001) citing *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). Petitioner was required to, but did not, produce evidence that the Newspapers "entertained serious doubts as to the truth of" councilwoman Mims statement. *See St. Amant v. Thompson,* 390 U.S. at 731, 88 S.Ct. 1323. Only where the plaintiff can show "an extreme departure from the standards of investigation and reporting ordinarily adhered to by reasonable publishers" can a public figure plaintiff withstand a motion for summary judgment on the issue of actual malice. *Anderson v. Augusta Chronicle, supra.* In my view, petitioner did not meet this burden here.

"The actual malice standard is premised on our 'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.'" *George v. Fabri,* 345 S.C. at 456–457, 548 S.E.2d at 876, citing *New York Times v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Here, Newspapers published information about a county official, information given to them by another county official. That petitioner's name was not on a list provided by a different county official is not evidence that publishing the story was "an extreme departure from investigative standards" nor was there any evidence that Newspapers in fact harbored serious doubts about councilwoman Mims' story. Moreover, the reporter's knowledge of the political enmity between councilwoman Mims and petitioner, combined with her failure to further investigate Mims' statement before publishing it, is "patently insufficient" to prove actual malice. *Elder v. Gaffney Ledger,* 341 S.C. 108, 533 S.E.2d 899 (2000). Finally, the gist of the allegedly defamatory story, that county employees were seen performing yard work on petitioner's property, is not particularly inflammatory given that the county had in place a policy permitting this practice.

I would affirm the decision of the Court of Appeals.