691 S.E.2d 473

The BANK OF NEW YORK, as Trustee for the Holders of EQCC Asset Backed Certificates, Series 2001–1F, Respondent/Appellant,

v.

SUMTER COUNTY, South Carolina; Linwood S. Evans; South Carolina Judicial Department; and Shirley D. Holloman, Defendants,

of whom Sumter County, South Carolina is, Appellant/Respondent,

and

South Carolina Judicial Department is, Respondent.

Branch Banking and Trust Company, Respondent/Appellant,

v.

Sumter County, South Carolina; Linwood S. Evans; South Carolina Judicial Department; and Shirley D. Holloman, Defendants,

of whom Sumter County, South Carolina is, Appellant/Respondent,

and

South Carolina Judicial Department is, Respondent.

Branch Banking and Trust Company, Respondent/Appellant,

v.

Sumter County, South Carolina; Linwood S. Evans; South Carolina Judicial Department; and Shirley D. Holloman, Defendants,

of whom Sumter County, South Carolina is, Appellant/Respondent,

and

South Carolina Judicial Department is, Respondent.

Deutsche Bank National Trust Company, as Trustee under the Pooling and Servicing Agreement dated as of March 1, 2003, Morgan Stanley Dean Witter Capital 1, Inc., Trust 2003–NC3, Respondent/Appellant,

v.

Sumter County, South Carolina; Linwood S. Evans; South Carolina Judicial Department; and

148

Shirley D. Holloman, Defendants,

of whom Sumter County, South Carolina
is, Appellant/Respondent,

and

South Carolina Judicial Department is, Respondent.

GMAC Mortgage, LLC, Respondent/Appellant,

v.

Sumter County, South Carolina; Linwood S. Evans;
South Carolina Judicial Department; and
Shirley D. Holloman, Defendants,

of whom Sumter County, South Carolina
is, Appellant/Respondent,

and

South Carolina Judicial Department is, Respondent.

No. 26794.

Supreme Court of South Carolina.

Heard Nov. 17, 2009.
Decided March 29, 2010.

150

William H. Davidson, II, and Andrew F. Lindemann, both of Davidson & Lindemann, of Columbia, for Appellant/Respondent Sumter County.

Gerald M. Finkel, Sean A. O'Connor, and Brendan P. Langendorfer, all Finkel & Altman, of Charleston, for Respondent/Appellant GMAC Mortgage Corporation.

Robert P. Wood, of Rogers Townsend & Thomas, of Columbia, for Respondents/Appellants Bank of New York, Branch Banking & Trust Co., and Deutsche Bank.

T. Parkin Hunter and Jonathan B. Williams, both of Office of the Attorney General, of Columbia, for Respondent South Carolina Judicial Department.

Robert E. Lyon, Jr., General Counsel, and M. Clifton Scott, Sr., Staff Attorney, both of Columbia, for Amicus Curiae South Carolina Association of Counties.

PER CURIAM.

These appeals are from an order granting the South Carolina Judicial Department (SCJD) summary judgment in five consolidated tort suits brought by lending institutions (Lenders)[1] that lost foreclosure proceeds as the result of embezzlement by defendant Holloman, at the time an employee of the Sumter County Master–in–Equity's office. The former Sumter County Master who employed Holloman, Linwood Evans

---

[1] Bank of New York; Branch Banking and Trust Company (2 suits); Deutsche Bank National Trust Company, as Trustee; and GMAC Mortgage, LLC.

(Evans), is also a defendant. Holloman was able to carry out her criminal scheme because Evans gave her signed blank checks, and did not reconcile bank statements. Lenders have appealed and filed a joint brief, and Sumter County (County) has also appealed. We affirm the Lenders' appeal and dismiss the County's appeal.

## FACTS

The master-in-equity courts, which are county-based, are part of the unified judicial system. S.C.Code Ann. § 14–11–10 (Supp.2008); *Kramer v. County Council of Dorchester County*, 277 S.C. 71, 282 S.E.2d 850 (1981). The master is appointed to a six-year term by the Governor, subject to the advice and consent of the General Assembly. S.C.Code Ann. § 14–11–20 (Supp.2008). Candidates for the office must submit applications to, and be reviewed by, the Judicial Merit Selection Commission (Commission), which then submits reports and recommendations to the county legislative delegation. S.C.Code Ann. § 2–19–110 (2005). Only candidates found qualified by the Commission may be submitted by the delegation to the Governor for consideration as appointee to the office. *Id.*

The equity courts are considered a division of the circuit court. S.C.Code Ann. § 14–11–15. A master is entitled to the same benefits and is subject to the same requirements of the South Carolina Bar as a circuit or family court judge, and is subject to the same Supreme Court rules as these judges. *Id.* Masters, however, are not entitled to participate in the state judicial retirement system. *Id.* The county in which the master serves is responsible for providing "the salary, equipment, facilities, and supplies" for the master, the salaries of his support personnel, and all other costs associated with the master's office's "necessary and proper operation." S.C.Code Ann. § 14–11–30 (Supp.2008). Section 14–11–30 also establishes the formula, based upon population and the salary of a circuit judge, for determining each county's master's salary. *Id.* All fees and costs recovered by the master are to be paid into the county's general fund. S.C.Code Ann. § 14–11–40 (Supp.2008).

The Supreme Court may remove a master from office for misconduct under Rule 7(b)(1), Rules for Judicial Disciplinary Enforcement (RJDE), Rule 502, SCACR. The Governor, too, may remove a master from office. S.C.Code Ann. § 1–3–240(A) (2005).

The trial court had before it motions for summary judgment filed by Lenders, Evans, County, and SCJD. All motions, except that of SCJD, were denied in summary orders. The order granting SCJD's summary judgment contains these findings:

A. Holloman is not an employee of SCJD;

B. Evans is not an employee of SCJD;

C. SCJD is not required by law to supervise masters' management of their bank accounts: SCJD monitoring is limited to caseloads, and auditing of caseloads only, and therefore SCJD could not be negligent for failing to monitor the Sumter County Master's bank account;

D. Since Evans was not its employee, SCJD cannot be liable for negligent supervision of him;

E. There is no fiduciary relationship between SCJD and Lenders;

F. Since SCJD exercised no ownership rights over foreclosure funds to the exclusion of Lenders, did not derive any benefit from those funds, and had no duty to safeguard, hold or deliver those funds, summary judgment on Lenders' conversion and constructive bailment claims was appropriate; and

G. SCJD is immune from liability on the basis of judicial immunity and the Tort Claims Act (TCA).[2]

On appeal, Lenders raise a number of issues, some of which are directed to the potential liability of the County. Since the appealed order granted summary judgment to SCJD only, County's liability is an open question to be resolved first at the circuit court level. We therefore decline to address any issues related to County's liability.

■ In its appeal, County has raised two issues, asking whether Evans and/or Holloman was an employee of SCJD.

---

2. S.C.Code Ann. §§ 15–78–10 *et seq.* (2005 and Supp. 2008).

We decline to address these issues, and dismiss County's appeal. County, unlike Lenders, chose not to file any responsive pleading to SCJD's summary judgment motion, but instead filed only a summary judgment motion on its own behalf. In asking this Court to hold that Evans and Holloman are SCJD employees, County is in reality asking the Court to reverse the trial judge's denial of its summary judgment motion, which was predicated in part on County's contentions that Evans and Holloman were SCJD employees. Since it is well-settled that an order denying summary judgment is never reviewable on appeal, *Olson v. Faculty House of Carolina, Inc.*, 354 S.C. 161, 580 S.E.2d 440 (2003), we dismiss County's appeal.

## LENDERS' ISSUES

1) Whether the circuit court erred in granting summary judgment to SCJD finding Evans was not its employee?

2) Whether the circuit court erred in granting SCJD summary judgment on Lenders' negligent supervision theory?

3) Whether the circuit court erred in holding SCJD did not have a duty to supervise Evans' bank accounts?

4) Whether the circuit court erred in holding that SCJD had no duty to audit Evans' books?

5) Whether the circuit court erred in holding SCJD did not owe Lenders a fiduciary duty to safeguard foreclosure funds?

6) Whether the circuit court erred in granting SCJD summary judgment on the Lenders' conversion theory?

7) Whether the circuit court erred in holding there was no constructive bailment between SCJD and the Lenders?

8) Whether a writ of mandamus should issue requiring SCJD to give Lenders the foreclosure funds?

9) Whether the circuit court erred in holding that SCJD is immune under the Torts Claim Act and/or the doctrine of judicial immunity?

Summary judgment is appropriate where there is no genuine issue of material fact, and it is clear that the moving

party is entitled to judgment as a matter of law. Rule 56(e), SCRCP. On review of an order granting summary judgment, the appellate court applies the same standard as that used by trial court. *Edwards v. Lexington County Sheriff's Dep't*, 386 S.C. 285, 688 S.E.2d 125 (2010).

## ANALYSIS

### 1. Was SCJD Evans' employer?

■ The Lenders argue the trial court erred in finding SCJD was not Evans' employer, and they also argue that he was, in fact, the dual employee of both SCJD and County. Since the trial court did not address the dual employee issue, it is not preserved for our review. *Metts v. Mims*, 384 S.C. 491, 682 S.E.2d 813 (2009) (issue must be raised and ruled upon below to be preserved for appeal). We affirm the circuit court's ruling that Evans was not an employee of SCJD.

As explained above, the trial court's order held that the Lenders' contention that Evans was an employee of SCJD rested on three specific actions: [3]

The Supreme Court suspended Evans from office;
1) The Supreme Court authorized County and the County Sheriff to audit the records in the Evans' Master's Office; and
2) Court Administration "told Sumter County what Judge Evans' salary would be."

The judge concluded that none of these actions created a genuine issue of material fact as to the existence of an employment relationship between SCJD and Evans, and granted SCJD summary judgment. We agree.

The first two alleged indicia of employment, the suspension of Evans and the subsequent audit, came about as the result of judicial disciplinary proceedings. By statute, masters are subject to discipline by the Supreme Court for violations of the Code of Judicial Ethics, S.C.Code Ann. § 14–11–15; *see also* Rule 7(b)(1), RJDE, Rule 502, SCACR. We agree with the trial judge that actions taken by SCJD in the course of a

---

3. Since there was no objection to the trial judge's analytical approach to this issue below, it is the law of the case *ML–Lee Acquisition Fund, L.P. v. Deloitte & Touche*, 327 S.C. 238, 489 S.E.2d 470 (1997) (unchallenged ruling, right or wrong, is the law of the case).

judicial disciplinary proceeding are not indicia of an employee/employer relationship: to hold otherwise, for example, would make SCJD the employer of all attorneys, since all members of the bar are subject to disciplinary investigation, including suspension by the Court and/or an audit.

The third fact advanced by the Lenders in support of their opposition to SCJD's summary judgment motion on the employment issue was that SCJD, through Court Administration, "told Sumter County what Evans' salary would be." By statute, the salary of a master is based upon a formula which takes into account both the salary of a circuit court judge and the county's population. *See* § 14–11–30. While Court Administration sends a letter to each county government calculating the master's salary for that county using the statutory formula, that salary is determined by the formula, not by the SCJD.

We affirm the order which grants SCJD summary judgment on Lenders' claim that Evans' was an employee of SCJD, finding no material issue of fact here. *Edwards, supra.*

### 2. Negligent Supervision

■■ Lenders contend the trial court erred in granting SCJD summary judgment on their negligent supervision claims. As Lenders acknowledge, this claim fails since we affirm the trial judge's ruling that Evans was not an employee of SCJD. Moreover, even if there were an employment relationship, this cause of action lies "in circumstances where an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public. . . ." *James v. Kelly Trucking Co.*, 377 S.C. 628, 661 S.E.2d 329 (2008). There is no evidence here that SCJD knew or should have known that Evans or Holloman posed an "undue risk of harm to the public."

The order is affirmed to the extent it grants SCJD summary judgment on the Lenders' negligent supervision cause of action. *Edwards, supra.*

### 3. Duty to supervise a master's bank accounts and his audit books

■ Lenders contend that statutes impose a duty on SCJD to supervise a master's bank accounts and his audit books.

The Lenders would find this duty in either the Chief Justice's administrative authority to "examine the administrative methods, systems and activities of the courts and their employees" pursuant to S.C.Code Ann. § 14–1–90, or through the Judicial Council (which they contend is a part of SCJD), a body authorized to "study and survey the administration of justice ... and of the organization, procedure, practice, rules and methods of administration and operation of each and all of the courts...." S.C.Code Ann. § 14–27–70(1) (1976). We agree with the circuit court judge that summary judgment is appropriate here as there is no duty on the part of SCJD.

Neither § 14–1–90 nor § 14–27–70(1) imposes a duty on SCJD to supervise a master-in-equity's bank accounts and/or audit books. Instead, by statute, this auditing duty is placed on the county. S.C.Code Ann. § 4–9–150 (Supp.2008). Even if § 14–1–90 or § 14–27–70(1) were read to create such a duty, Lenders have not made any showing that their claims would not be precluded by the public duty rule. *E.g., Arthurs ex rel. Estate of Munn v. Aiken County,* 346 S.C. 97, 551 S.E.2d 579 (2001) (presumption that statute creating or defining duties of public office create no duty of care towards individual members of the general public).

We affirm the trial judge's decision granting SCJD summary judgment on Lenders' duty to audit/supervise claims.

### 4. *Fiduciary Duty*

██ Lenders contend the trial judge erred in finding SCJD did not owe lenders a fiduciary duty to protect the funds held in the Evans' foreclosure account. Lenders' argument is premised, in the first instance, on the assertion that the courts, that is, SCJD requires that masters hold these funds.

Under current practice, authority for the master to hold these funds is found in Rule 71, SCRCP. The requirement that the master hold these funds in an account over which he has control derives not from this rule, however, but rather from the foreclosure statutes which permit, among other things, the seeking of a deficiency judgment. When such a judgment is sought, upset bids are allowed, and where such a bid is made, the initial deposit may have to be returned. S.C.Code Ann. §§ 15–39–720 and –750 (2005). In order to

comply with this statutory possibility, the master must control the funds. Moreover, by statute, a master's fee for a real estate foreclosure is set at 1% "of the bid or of the funds passing through the court, whichever is greater." S.C.Code Ann. § 14–11–310 (Supp.2008). This statute anticipates that the funds will be held by the master.

It is simply inaccurate to state that the courts (or SCJD), rather than statutes and a rule which implements the statutory practices (submitted to the General Assembly) require that masters hold these funds.

We affirm the grant of summary judgment to SCJD on Lenders' fiduciary duty theory, which is premised on a factual inaccuracy.

5. *Conversion*

██ Conversion is "the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the owner's rights." *Moore v. Weinberg*, 383 S.C. 583, 681 S.E.2d 875 (2009). Lenders' conversion argument is simply an extension of its negligent supervision argument: SCJD negligently supervised Evans, who in turn negligently supervised Holloman, who in turn was able to convert the funds. Since there was no negligent supervision on the part of SCJD vis-à-vis Evans, who was not its employee, the conversion argument also fails. We affirm the grant of summary judgment to SCJD on Lenders' conversion claim.

6. *Constructive Bailment*

██ "A constructive bailment arises when one person has lawfully acquired possession of another person's personal property, other than by virtue of a bailment contract, and holds it under such circumstances that the law imposes on the recipient of the property the obligation to keep it safely and redeliver it to the owner." *Hadfield v. Gilchrist*, 343 S.C. 88, 538 S.E.2d 268 (Ct.App.2000) (internal citations omitted). Here, SCJD never acquired possession of Lenders' funds, nor does it hold those funds, which have been embezzled by Holloman.

The trial court properly granted summary judgment on the bailment claim.

### 7. *Mandamus*

Lenders contend the trial court erred in failing to issue a writ of mandamus compelling SCJD to turn over the foreclosure funds. This issue is not before the Court, as there is no ruling below on this mandamus request. *E.g. Metts v. Mims, supra.* While Lenders sought to mandamus County, no writ of mandamus was sought against SCJD until Lenders filed their motion to alter or amend the order. It is axiomatic that an issue cannot be raised for the first time in a post-trial motion. *E.g., Dixon v. Dixon,* 362 S.C. 388, 608 S.E.2d 849 (2005).

### 8. *Immunity*

Since we affirm the circuit court's rulings on all liability theories asserted against SCJD, we need not reach the immunity claims raised by SCJD.

## CONCLUSION

The Lenders' appeals are affirmed, and County's appeal is dismissed.

**AFFIRMED IN PART; DISMISSED IN PART.**

Acting Chief Justice WALLER, PLEICONES, BEATTY, JJ., and Acting Justices JAMES E. MOORE and E.C. BURNETT, III, concur.