624 S.E.2d 447

**Sharon DOE, as Special Conservator for her daughter, Audra Doe, 2003–CP–23–2255, Appellant,**

**v.**

**ATC, INC., Transportation Management Services, Inc., and Multisystems, Inc., Respondents.**

**Sharon Doe, as Special Conservator for her daughter, Audra Doe, 2003–CP–23–2256, Appellant,**

**v.**

**Calvin Murray, Respondent.**

**No. 4063.**

Court of Appeals of South Carolina.

Heard Nov. 8, 2005.

Decided Dec. 19, 2005.

200

John Robert Peace, of Greenville, for Appellant.

Maureen Z. White, of Greenville and Michael H. Montgomery, of Columbia, for Respondents.

KITTREDGE, J.:

This is an appeal from the granting of a directed verdict in a negligent retention action. The dispositive issue, as narrowly framed in the trial court, is whether a jury question existed as a result of the employer's decision not to fire an employee based on the report of a single incident of an inappropriate sexual advance toward a fellow employee. We agree with the trial court that a jury question was not created by the employer's decision to retain the employee. We affirm.

## FACTS [1]

Appellant Sharon Doe [2] is the mother of Audra Doe, a disabled adult female. Audra rode a Medicaid bus to physical therapy sessions and to Greenville Memorial Hospital, where she did volunteer work. Calvin Murray, an employee of Respondents (collectively "ATC") drove the Medicaid bus on which Audra sometimes rode. While Audra was on the bus, Murray repeatedly touched her legs inappropriately, kissed her and made persistent comments to her of a sexual nature over a period of several months.

Doe filed separate lawsuits on behalf of Audra against Murray and ATC. These suits were consolidated and tried together. Doe's claim against ATC was based on a negligent retention theory. [3]

The trial court directed a verdict in favor of ATC. The action against Murray resulted in a jury verdict of $1,000. Doe appeals only from the direction of a verdict in favor of ATC, and there is no challenge in connection with the action

---

1. We adhere to the appropriate standard of review and thus view the facts in a light most favorable to Appellant, although the facts necessary for resolution of this appeal are largely undisputed.

2. We have substituted the name Doe due to the nature of the allegations.

3. The complaint alleged negligent supervision, but the case was tried as one of negligent retention.

against Murray. Concerning the negligent retention theory of liability against ATC, Doe contended that Murray should have previously been fired due to an earlier, isolated incident involving a fellow employee, Tycie Moss.

Moss testified that several months before the incidents involving Audra, Murray made an inappropriate advance toward her. Moss's car had broken down, so Murray picked her up before her shift, around 3 or 4 o'clock in the morning. Moss got out of Murray's van and, as she was getting into her van, Murray approached her, and "then grabbed [her] arms ... like he was forcing [her] to kiss him." Moss pushed him away before he could kiss her, got into her van, and left. Moss also testified that Murray made inappropriate sexual comments to her in the presence of clients on the van.

Moss reported the incident to her supervisor, Hattie Wright. Moss, however, told Wright not to write up a formal complaint against Murray because she "didn't want it to blow up." ATC had a formal complaint procedure that provided for an investigation of a complaint, but Moss refused to file a complaint. In fact, Moss did not want Wright "to do anything about [the incident]." Wright said that Moss wanted her disclosure to remain in confidence, noting that Moss did not want Wright to "say anything to anyone."

Wright ignored Moss's wishes and pursued the matter the same day, initially by speaking with Murray. Murray gave "his side" and said the incident was not as "interpreted." Without an admission from Murray and the lack of a formal complaint, Wright nevertheless issued Murray a verbal warning, instructing him to "keep [his] distance" and to "do [his] job." Also on the same day, Wright discussed the incident with her supervisor, Audlyn Williams, who was the manager in charge of the Greenville office. Williams believed that in light of Murray's otherwise laudable employment record—he "never had a [problem] before"—Wright's actions were appropriate. Wright subsequently prepared a memorandum for the file regarding the incident.

It is undisputed that ATC—prior to Doe's complaint on behalf of Audra—had no other knowledge of inappropriate conduct of any kind by Murray.

After Doe filed her complaint, Williams and Wright notified Melville Padgett, the general manager for ATC's Medicaid properties in South Carolina. Padgett testified he was satisfied with Wright's earlier actions because prior to the present action Murray had a "clean record" except for the single incident reported by Moss. Following Doe's complaint, Murray admitted making an inappropriate comment to Audra on the bus, and Padgett fired him.

## The Directed Verdict Motion

ATC moved for a directed verdict, and the trial court engaged in a lengthy discussion with Doe's counsel in an effort to determine the precise allegation of negligence against ATC. Specifically, it was not clear what Doe claimed ATC should have done differently following the reported incident involving Moss. The answer eventually surfaced:

THE COURT: So they would have to have fired him [following the report by Moss]?

[DOE'S COUNSEL]: Yes, sir.

The trial court, as noted, directed a verdict in favor of ATC.

## STANDARD OF REVIEW

In reviewing a motion for directed verdict, the appellate court applies the same standard as the circuit court. *Welch v. Epstein,* 342 S.C. 279, 299, 536 S.E.2d 408, 418 (Ct.App.2000). The court must view the evidence and the inferences that can reasonably be drawn in the light most favorable to the nonmoving party. *Sabb v. South Carolina State Univ.,* 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002). If the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created and the motion should be denied. *Adams v. G.J. Creel & Sons, Inc.,* 320 S.C. 274, 277, 465 S.E.2d 84, 85 (1995); *Bailey v. Segars,* 346 S.C. 359, 366, 550 S.E.2d 910, 913 (Ct.App.2001).

## LAW/ANALYSIS

Doe argues that ATC negligently retained Murray by failing to fire him following the report by Moss. The issue before us, as framed in the trial court and stipulated at oral argument, is a narrow one—was a jury question presented on

Doe's theory of liability that ATC was negligent in not firing Murray following the attempted kissing incident involving a fellow employee? We join the circuit court in answering the question "no."

■ We have canvassed the record and conclude that ATC's decision not to fire Murray following the incident with Moss was reasonable as a matter of law. Doe makes no claim that ATC's *supervision* of Murray was negligent following the incident with Moss. *Cf. Degenhart v. Knights of Columbus*, 309 S.C. 114, 116–17, 420 S.E.2d 495, 496 (1992) (recognizing the tort of negligent supervision in South Carolina law); *Moore by Moore v. Berkeley County School Dist.*, 326 S.C. 584, 590, 486 S.E.2d 9, 12–13 (Ct.App.1997) (examining negligent supervision case law since *Degenhart*).[4] We can find no South Carolina case on point, and none has been cited. South Carolina, indeed, recognizes the tort of negligent retention in the context of a negligent supervision action. We have no pause in concluding our supreme court would recognize the tort of negligent retention, independent of allegations of negligent supervision. *See e.g., Yunker v. Honeywell, Inc.*, 496 N.W.2d 419, 422 (Minn.Ct.App.1993) (holding that negligent hiring and negligent retention are distinct theories of recovery separate from negligent supervision). In addressing the law of negligent supervision, our supreme court has cited with approval the Restatement (Second) of Torts § 317 (1965). *Degenhart*, 309 S.C. at 116–17, 420 S.E.2d at 496. Comment c to section 317 of the Restatement (Second) of Torts deals specifically with the retention of employees, and provides, in relevant part:

c. Retention in employment of servants known to misconduct themselves. There may be circumstances in which the only effective control which the master can exercise over the conduct of his servant is to discharge the servant.

---

4. In Appellants' Final Brief, Doe seeks to recast the case as one of negligent supervision, arguing that ATC was "on notice" about the incident with Moss and hence the need to "exercise control" over Murray. Issue preservation rules preclude us from expanding the case and issues beyond those argued in the trial court. Counsel for Doe conceded at oral argument that the case against ATC rested solely on the claim that ATC was required to fire Murray following the incident with Moss. When properly viewed, Doe has defined and equated ATC's duty to "exercise control" with a duty to fire Murray.

Therefore the master may subject himself to liability under the rule stated in this Section by retaining in his employment servants who, to his knowledge, are in the habit of misconducting themselves in a manner dangerous to others.

■ Our review of negligent hiring and retention cases from other jurisdictions leads us to conclude that such cases generally turn on two fundamental elements—knowledge of the employer and foreseeability of harm to third parties. *Di Cosala v. Kay*, 91 N.J. 159, 450 A.2d 508, 516 (1982). These elements, from a factual perspective, are not necessarily mutually exclusive, as a fact bearing on one element may also impact resolution of the other element. From a practical standpoint, these elements are analyzed in terms of the number and nature of prior acts of wrongdoing by the employee, and the nexus or similarity between the prior acts and the ultimate harm caused. Such factual considerations—especially questions related to proximate cause inherent in the concept of foreseeability—will ordinarily be determined by the factfinder, and not as a matter of law. *Hoke v. May Dep't Stores Co.*, 133 Or.App. 410, 891 P.2d 686, 691 (1995); *Gaines v. Monsanto Co.*, 655 S.W.2d 568, 571 (Mo.Ct.App.1983). Nevertheless, the court should dispose of the matter on a dispositive motion when no reasonable factfinder could find the risk foreseeable or the employer's conduct to have fallen below the acceptable standard. *Hoke*, 891 P.2d at 690; *Reed v. Kelly*, 37 S.W.3d 274, 278 (Mo.Ct.App.2000). We believe Doe's claim against ATC is properly resolved as a matter of law.

■ The standard, according to the Restatement section 317 comment c, is whether the employer knew the offending employee was "in the habit of misconducting [himself] in a manner dangerous to others." Accordingly, many courts have recognized that a plaintiff must demonstrate some propensity, proclivity, or course of conduct sufficient to put the employer on notice of the possible danger to third parties. *See e.g., Frye v. Am. Painting Co.*, 642 N.E.2d 995, 999 (Ind.Ct.App. 1994) (holding that an employer may be held negligent if it retains an employee it knew or should have known had a propensity for dangerous behavior); *Alpharetta First United Methodist Church v. Stewart*, 221 Ga.App. 748, 472 S.E.2d 532, 536 (1996) (holding that an employer may not be held liable for

negligent hiring or retention unless the plaintiff shows the employer knew or should have known of the employee's dangerous propensities); *Gomez v. City of New York*, 304 A.D.2d 374, 758 N.Y.S.2d 298, 299 (N.Y.App.Div.2003) ("[R]ecovery on a negligent hiring and retention theory requires a showing that the employer was on notice of the relevant tortious propensities of the wrongdoing employee.").

Based on this requirement, some courts have dismissed negligent hiring and negligent retention claims when the claim rests on a single prior incident of misconduct. For example, in *Sullivan v. St. Louis Station Assocs.*, 770 S.W.2d 352 (Mo.Ct.App.1989), the court held that a single prior incident was insufficient as a matter of law to establish negligent retention. The Sullivan court noted that "the plaintiff must demonstrate that the employee had dangerous proclivities . . . which denotes a course of conduct rather than a single aberration of behavior." *Id.* at 357. Similarly, in *Moore v. Hosier*, 43 F.Supp.2d 978, 993–994 (N.D.Ind.1998), the United States District Court for the Northern District of Indiana granted summary judgment to an employer in a negligent hiring and retention claim that was predicated on a single, prior incident. The court observed that a single incident does not equate to a habit or propensity toward misconduct. *Id.* at 993.

■■ However, we do not view the "habit of misconducting" language in the Restatement as mandating multiple prior acts of misconduct for a negligent retention action to remain viable in South Carolina. We hold that a single isolated incident of prior misconduct (of which the employer knew or should have known) may support a negligent retention claim, provided the prior misconduct has a sufficient nexus to the ultimate harm. In *Doe v. Greenville Hosp. Sys.*, 323 S.C. 33, 40–41, 448 S.E.2d 564, 568 (Ct.App.1994), in the context of a negligent supervision claim, this court affirmed the denial of the employer's directed verdict motion—and hence a jury question was presented—where the prior isolated incident involved the same sexual misconduct against the same victim.

Turning to the case at hand, the prior alleged misconduct by Murray against Moss, a co-employee, lacks a sufficient nexus to the sexual assault on Audra. While it is true that both incidents may generally be described as sexual in nature, the

totality of the prior incident is a far cry from the reprehensible, persistent pattern of abuse against Audra. If Moss's allegation against Murray were founded,[5] then Murray's conduct involving Moss certainly deserved some form of disciplinary action. ATC could have taken any number of actions, such as transferring Murray or requiring counseling. However, none of these possibilities are in play here, because we are not confronted with any claim of negligent supervision, but only the claim that ATC should have fired Murray.

Doe's laser-beam approach—Murray had to be fired—is simply not reasonable under the facts presented, including the nature of the incident involving Moss, Moss's unwillingness to file a formal complaint, and the complete absence of evidence of other such similar conduct by Murray. Indeed, but for the allegation by Moss, Murray had a "clean" work record. Imposition of liability against an employer for negligent retention under these facts is legally untenable. This court in no manner condones Murray's purported misconduct against Moss, and we recognize that a single assault may well create a jury question as to whether an employee should be fired. But this is not such a case.

## CONCLUSION

We find that the directed verdict for ATC was appropriate under the facts presented and the theory of liability advanced by Doe. A reasonable jury could not conclude, based on the incident involving Moss, that ATC knew or should have known that Murray was likely to commit a sexual assault sometime in the future. The decision to retain Murray following the informal report by Moss was reasonable as a matter of law. The order of the trial court is

**AFFIRMED.**

STILWELL and WILLIAMS, JJ., concur.

---

5. We decline Doe's invitation to view Moss's allegation in hindsight through the lens of Murray's abuse of Audra.