THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Shirley, A. Kirk, Appellant,
v.
Mumford, Inc., d/b/a Health Force, Respondent.
 
 
 

Appeal From Charleston County
 Thomas L. Hughston, Jr., Circuit Court Judge

Unpublished Opinion No. 2006-UP-179
Submitted March 1, 2006  Filed April 4, 2006

AFFIRMED

 
 
 
Geoffrey H. Waggoner, of Charleston, for Appellant.
Graham Pollock Powell, of Charleston, for Respondent.
 
 
 

PER CURIAM:  Shirley Kirk contends the trial court erred in directing a verdict on all claims including the claims of respondeat superior, breach of implied and express warranties, and negligent hiring.  We affirm.[1]  
 FACTS
 Shirley Kirk and her daughter are disabled and require assistance with daily activities at home.  Mumford, Inc., d/b/a Health Force (Mumford) provides at-home services through Personal Care Aides (PCAs).  In 1997, Kirk hired Mumford to provide home health care services on a regular basis.  Thereafter, Mumford provided a series of employees to perform a variety of services at Kirks home for her and her daughters benefit.
 In the spring of 2001, Kirk noticed items of jewelry and other property were missing from her home and called the police.  An investigation was conducted but no items were recovered.  In April of 2002, Kirk noticed additional items were missing, and shortly thereafter, a Mumford employee, Shirley Caples, confessed to the theft and led police to a pawnshop where some items of property were recovered.  Mumford immediately terminated Caples employment. 
 Kirk commenced the instant action with an amended complaint filed on August 14, 2003, asserting causes of action for breach of contract and negligent hiring.  Linda Sue Gilpatrick, Mumfords office manager, testified about how Mumford hired employees to work as PCAs.  Gilpatrick testified that typically the PCA seeks employment after reading a newspaper ad.  As part of the application process, the prospective employee completes a written application, identifies two references, and is given a competency exam before an interview.  Generally, a receptionist reviews the application, checks the references, and administers the competency test.  In addition, Mumford relies on the references and background checks to determine the character of the applicant.
 On her application, Caples indicated that she had prior experience at the Coastal Center, but provided few additional details.  She also noted that, at the time of her application, she was employed at an elementary school, where she worked in food service.  A temporary part-time receptionist, who had been at Mumford only a short period of time, conducted the reference check and confirmed that Caples was a good worker at the elementary school.  The receptionist did not call the Coastal Center, which Mumford assumed to be her source of prior experience as a PCA. 
 As part of the application process, Caples took a written Competency Evaluation which required a minimum score of 70 for employment.  Caples scored a 76.5.  Also included in the application process was the requirement that all potential employees authorize, in writing, a criminal records check.  Because of the cost, however, no such checks were actually conducted by Mumford.  On her application, Caples denied any criminal convictions. 
 At the trial, Kirk called George Vessel, a licensed private investigator, who testified regarding the manner and expense of background checks.  He testified that he generally uses a computer to conduct a 10 to 20-year address history search through one of several databases to which he subscribes.  Additionally, he does a search for social security numbers and names.  He charges a client $25 for such a search; however, he said that anyone with a business license can subscribe to these services and pay $.25 to $5 for a basic search.  In November 2003, Vessel conducted a background check on Caples.  Using only her name, he learned that she was associated with three social security numbers.  He also learned that she had ten addresses in the past twelve years.  Vessel found four different name variations and three dates of birth for Caples.  He considered these results to be red flags and justification for a further search that revealed a felony DUI charge and a sentence of five years probation, in the State of Georgia. 
 Prior to the case being submitted to the jury, Mumford moved for a directed verdict on all causes of action.  The trial court granted the motion.  This appeal followed.  
STANDARD OF REVIEW
 When ruling on directed verdict or JNOV motions, the trial court must view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party.  Sabb v. S.C. State Univ., 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002).  The trial court must deny the motions when the evidence yields more than one inference or its inference is in doubt.  Id.  In reviewing the grant of a directed verdict, the appellate court should not ignore facts unfavorable to the opposing party.  Collins v. Bisson Moving & Storage, Inc., 332 S.C. 290, 296, 504 S.E.2d 347, 350 (Ct. App. 1998).  The court must determine whether a verdict for the opposing party would be reasonably possible under the facts as liberally construed in his favor.  Id.  
 LAW/ANALYSIS
 I.  Claim for Respondeat
 Superior
 Kirk contends the trial court erred in directing a verdict on her claim of liability based on respondeat superior because there was uncontroverted evidence that an employee of Mumford, while employed as a PCA, stole jewelry and other items belonging to Kirk. 
 The issue of respondeat superior is not raised in Kirks amended complaint, nor is it addressed in the trial courts order granting a directed verdict.  Kirk did not file a motion to reconsider.  In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial court. 
 Holy Loch Distrib., Inc. v. Hitchcock, 340 S.C. 20, 24, 531 S.E.2d 282, 284 (2000).  Therefore, because this issue was not raised at trial, it cannot be raised for the first time on appeal.  
 II.  Claim for Breach of Expressed and Implied Warranties 
 Kirk contends the trial court erred in directing a verdict for her claims of breach of expressed and implied warranties because there was evidence from which the jury could have found Mumford assured Kirk that its employees were trustworthy and would respect her property, and thereafter one of those employees stole items from Kirk.  
 In Kirks amended complaint, she refers to breach of expressed and implied warranty in terms of a breach of contract issue, and the issues of breach of expressed or implied warranties were not addressed in the trial courts order.  The issue of a warranty, whether express or implied, was never addressed and Kirk did not file a motion to reconsider.  Therefore, this issue has not been preserved for our review.  Id.  
 Kirk contends the trial court erred by directing a verdict on her claim of liability based on negligent hiring because there was evidence that Mumford assumed a duty to perform background checks and a background check would have prevented the placement of the employee in her home.  We disagree. III. 
Claim Based on Negligent Hiring
 The action of negligent hiring generally turn[s] on two fundamental elementsknowledge of the employer and forseeability of harm to third parties.  Doe v. ATC, Inc., ___ S.C. ___, 624 S.E.2d 447, 450 (Ct. App. 2005).  [T]hese elements are analyzed in terms of the number and nature of prior acts of wrongdoing by the employee, and the nexus or similarity between the prior acts and the ultimate harm caused.  Id.  A plaintiff must demonstrate that the employer knew the employee had some propensity, proclivity, or course of conduct for dangerous behavior that was sufficient to put the employer on notice of possible danger to third parties.  Id. at ___, 624 S.E.2d at 451.  In Doe v. ATC, Inc., ___ S.C. at ___, 624 S.E.2d at 450, we held that a single isolated incident of prior misconduct (of which the employer knew or should have known) may support a negligent retention claim, provided the prior misconduct has a sufficient nexus to the ultimate harm.  
 In this case, Vessel testified that had Mumford performed a background check, it would have discovered that Caples had an alternate name, multiple addresses, multiple social security numbers, and a DUI in Georgia.  None of these prior acts has a sufficient nexus to the current crime of theft.  Therefore, even if the court had found that Mumford had a duty to conduct an extensive background check[2] as Kirk alleges should have been done, Kirk failed to establish that Mumford would have been put on notice that Caples may commit a theft.  Since there is no evidence in the record indicating that Mumford knew or should have known of any propensity of its employee to commit the theft, the evidence is not capable of more than one reasonable inference and the trial court properly directed a verdict in favor of Mumford.  
 AFFIRMED.
BEATTY, SHORT, and WILLIAMS, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] An affirmative legal duty exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance.  Hendricks v. Clemson Univ., 353 S.C. 449, 456, 578 S.E.2d 711, 714 (2003).  There is no statute or common law precedent in South Carolina that requires employers to conduct background checks on employees and Kirk did not present any evidence to establish a standard of care.  Mumfords act of checking one of Caples employee references does not create an affirmative duty that requires Mumford to conduct a further background investigation.