707 S.E.2d 456

**James KASE, Appellant,**

v.

**Michael L. EBERT and DMX Transportation, Inc., of whom DMX Transportation, Inc., is Respondent.**

**No. 4806.**

Court of Appeals of South Carolina.

Submitted Nov. 1, 2010.
Decided March 9, 2011.
Rehearing Denied April 21, 2011.

David Alexander, of Greenville, for Appellant.

Scott J. Bradley, of Greenville, for Respondent.

THOMAS, J.

In this personal injury action, James Kase appeals the grant of summary judgment to DMX Transportation, Inc. (DMX). We affirm.[1]

## FACTS AND PROCEDURAL HISTORY

On May 9, 2006, Kase was sitting in his parked truck at the Pilot Truck Stop near Duncan, South Carolina.[2] He felt another vehicle bump into the rear of his vehicle and exited his truck to investigate. Although Kase was not injured from the collision and the damage to his truck was minimal, a physical altercation ensued between Kase and Michael Ebert, the driver of the other vehicle, after both had exited their respective vehicles. Ebert fled the scene, but was later arrested. Kase was injured during the fight. The injuries caused him to miss several months of work and eventually lose his job.

Ebert was employed as a driver for DMX, and the vehicle that collided with Kase's truck belonged to DMX. DMX hired Ebert in 2004 even though he accidentally damaged some equipment during his road test and allegedly disclosed that he had been convicted of assault twenty-two years ago while working as a driver in Arizona. The assault conviction arose from a fight between Ebert and a security guard who attempted to ticket him for parking in the wrong place while making a delivery. Ebert's employment at DMX continued despite numerous professional and personal difficulties, including (1)

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. In his brief, Kase states he was employed as a tractor-trailer driver and was driving a tractor-trailer when the incident with Ebert occurred. The record, however, indicates that Kase was driving a truck and Ebert was driving a tractor-trailer at that time.

suspension of his commercial driver's license because of too many serious traffic violations within a short time, (2) a written reprimand from DMX concerning numerous accidents and complaints from customers and supervisors about his performance, (3) a second reprimand from DMX admonishing Ebert for hostile disrespect of his supervisors, (4) marital difficulties that were further compounded by DMX's withholding of his wages to pay child support, (5) a recent citation in Wisconsin for speeding and inattentive driving, and (6) a bizarre written complaint that he wrote against the officer who ticketed him in Wisconsin.

Although Ebert pled guilty to assaulting Kase, he continued to work for DMX for several months. DMX eventually dismissed Ebert for insubordination and because its insurance carrier refused to cover him because of too many speeding tickets.

In September 2007, Kase filed this action against Ebert and DMX, alleging causes of action for assault and battery against Ebert, as well as negligence and gross negligence claims against both defendants. Kase also sued DMX on claims of negligent entrustment, negligent hiring, training, supervision, and/or retention, and respondeat superior. In October 2008, DMX moved for summary judgment.

After a hearing on the motion in February 2009, the trial judge granted the motion, holding (1) Ebert was acting outside the course and scope of his employment when he assaulted Kase; therefore, DMX was not vicariously liable for his actions; and (2) Kase could not satisfy the necessary elements to proceed on his claims for negligent hiring, negligent retention, negligent supervision, or negligent entrustment. Kase then filed this appeal.

### ISSUES

I. Did the trial judge err in holding that DMX, as a matter of law, could not be held vicariously liable for Ebert's assault on Kase?

II. Did the trial judge err in granting summary judgment to DMX on Kase's causes of action for negligent hiring, negligent supervision, and negligent retention?

## STANDARD OF REVIEW

"Summary judgment is appropriate where there is no genuine issue of material fact, and it is clear that the moving party is entitled to judgment as a matter of law." *Bank of N.Y. v. Sumter County*, 387 S.C. 147, 154–55, 691 S.E.2d 473, 477 (2010). "On review of an order granting summary judgment, the appellate court applies the same standard as that used by the trial court." *Id.* at 155, 691 S.E.2d at 477. "[I]n cases applying the preponderance of evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment." *Hancock v. Mid–South Mgmt. Co.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009). To survive a summary judgment motion by the defendant in a lawsuit, however, the plaintiff must offer some evidence that a genuine issue of material fact exists for each element of the claim at issue except for those elements that are either uncontested or agreed to by stipulation. *Eadie v. Krause*, 381 S.C. 55, 65, n. 5, 671 S.E.2d 389, 393, n. 5 (Ct.App.2008), *cert. denied* (June 10, 2010) (citing *Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 116, 410 S.E.2d 537, 546 (1991)).

## LAW/ANALYSIS

### I. Respondeat superior claims

Kase contends the trial judge, in finding DMX could not be held vicariously liable for Ebert's actions, incorrectly ignored evidence that DMX endorsed or even encouraged its drivers to use violence to protect its property. We disagree.

"If the servant is doing some act in furtherance of the master's business, he will be regarded as acting within the scope of his employment, although he may exceed his authority." *Jones v. Elbert*, 211 S.C. 553, 558, 34 S.E.2d 796, 798–99 (1945). "On the other hand, if the servant acts for some independent purpose of his own, wholly disconnected with the furtherance of his master's business, his conduct falls outside the scope of his employment." *Crittenden v. Thompson–Walker Co.*, 288 S.C. 112, 116, 341 S.E.2d 385, 387 (Ct.App. 1986). "If a servant steps aside from the master's business for some purpose wholly disconnected with his employment,

the relation of master and servant is temporarily suspended; and this is so *no matter how short the time*, and the master is not liable for his acts during such time." *Lane v. Modern Music, Inc.*, 244 S.C. 299, 305, 136 S.E.2d 713, 716 (1964) (emphasis added).

The evidence cited by Kase consisted of deposition testimony from Ebert that he had discussed with his superiors at DMX that forceful action was necessary at times to protect DMX property. It is undisputed that the altercation at issue here did not arise because Ebert was protecting either a company vehicle or the cargo he was transporting. Rather, Ebert had already exited the vehicle and was defending himself against what he perceived to be a violent attack by Kase. We therefore agree with the trial judge's findings that Ebert was acting outside the course and scope of his employment with DMX when he assaulted Kase. It follows that DMX cannot be held vicariously liable for Ebert's actions. *See Armstrong v. Food Lion,* 371 S.C. 271, 276, 639 S.E.2d 50, 53 (2006) (holding that because "petitioners failed to produce any evidence that the Food Lion employees were acting within the scope of their employment or in furtherance of Food Lion's business when they attacked petitioners," Food Lion could not be held liable to the plaintiffs on those claims based on the theory of respondeat superior).

## II. Negligence claims

Kase further argues the trial judge, in granting summary judgment to DMX on his claims for negligent hiring, negligence, and negligent supervision, incorrectly disregarded (1) evidence that DMX had actual knowledge of Ebert's potential for violence and (2) his expert's opinion that the sum of Ebert's problems placed DMX on notice of this propensity. We disagree.

### A. Negligent hiring

■ Regarding his claim of negligent hiring, Kase argues Ebert's prior assault conviction was sufficient evidence to withstand DMX's summary judgment motion. Quoting this court's opinion in *Doe v. ATC,* 367 S.C. 199, 207, 624 S.E.2d 447, 451 (Ct.App.2005), he contends that because of the factual

similarities between the events leading to the conviction and those giving rise to the present litigation, "the prior misconduct has a sufficient nexus to the ultimate harm." We disagree.

■■ "In circumstances where an employer knew of or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim that the employer was itself negligent in hiring .... the employee...." *James v. Kelly Trucking Co.*, 377 S.C. 628, 631, 661 S.E.2d 329, 330 (2008). Negligent hiring cases "generally turn on two fundamental elements—knowledge of the employer and foreseeability of harm to third parties." *Doe*, 367 S.C. at 206, 624 S.E.2d at 450 (citing *Di Cosala v. Kay*, 91 N.J. 159, 450 A.2d 508, 516 (1982)). Although foreseeability is usually an issue of fact, "the court should dispose of the matter on a dispositive motion when no reasonable factfinder could find the risk foreseeable or the employer's conduct to have fallen below the acceptable standard." *Id.*

We agree with the trial judge that Kase presented no evidence that Ebert's single assault conviction, which took place more than twenty years before he was hired by DMX, was reason for DMX to foresee that employing Ebert would create an undue risk of harm to the public or that DMX's decision to hire him in view of this conviction fell below any acceptable hiring standard. Although Kase's expert testified that Ebert had a poor driving record when DMX hired him and indicated an employer may be justified in refusing to hire someone with a single simple assault conviction, he also conceded that this conviction alone would not have been sufficient to place DMX on notice that Ebert would become involved in a physical altercation with a third party. Kase has not directed our attention to any other evidence that DMX knew or should have known when it hired Ebert that he had a propensity toward violent behavior; therefore, we affirm the grant of summary judgment on Kase's negligent hiring claim.

B. Negligent supervision and retention

■ Kase also mentioned additional circumstances that, he contends, showed DMX was on notice of Ebert's potential for violence. These include (1) Ebert's poor driving record, which

included numerous moving violations; (2) Ebert's insubordinate behavior; (3) Ebert's marital difficulties and resulting financial problems; and (4) the incident in Wisconsin and Ebert's erratic behavior afterwards. It appears that because these circumstances arose during Ebert's employment with DMX, Kase has cited them to support his claims for negligent supervision and negligent retention. We hold, however, that Kase, as a matter of law, cannot proceed on these causes of action.

In *Degenhart v. Knights of Columbus*, 309 S.C. 114, 116–17, 420 S.E.2d 495, 496 (1992), the South Carolina Supreme Court quoted with approval section 317 of the *Restatement (Second) of Torts* (1965). This section provides as follows:

A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

(a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) is using a chattel of the master, *and*

(b) the master

(i) knows or has reason to know that he has the ability to control his servant, *and*

(ii) knows or should know of the necessity and opportunity for exercising such control.

(emphases added). Here, it was undisputed that the fight between Kase and Ebert did not take place on DMX property. Furthermore, Ebert had already exited the company vehicle before the altercation started. Although the fight between Kase and Ebert immediately followed the collision between the vehicles they were driving, it did not involve Ebert's use of a DMX chattel. *See id.* cmt. b ("So too, [a master] is required to exercise his authority as a master to prevent [his servants] from *misusing chattels* which he entrusts to them for use as his servants.") (emphasis added). We therefore agree with the trial judge that DMX, as a matter of law, cannot be liable for either negligent supervision or negligent retention.

## CONCLUSION

For the foregoing reasons, we affirm the grant of summary judgment to DMX on Kase's vicarious liability claim and his negligence causes of action.

**AFFIRMED.**

PIEPER and GEATHERS, JJ., concur.