# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Isabelle MacKenzie, Appellant/Respondent,

v.

C&B Logging and Charles Brandon Barr, Respondents/Appellants.

Appellate Case No. 2018-001016

———————

Appeal From Florence County
D. Craig Brown, Circuit Court Judge

———————

Opinion No. 5893
Heard December 8, 2020 – Filed February 9, 2022

———————

**AFFIRMED**

———————

J. Camden Hodge, Eric M. Poulin, and Roy T. Willey,
IV, all of Anastopoulo Law Firm, LLC, of Charleston,
for Appellant/Respondent.

Robert D. Moseley, Jr., and Megan M. Early-Soppa, both
of Moseley Marcinak Law Group LLP, of Greenville, for
Respondents/Appellants.

———————

**GEATHERS, J.:** In this negligence case, Isabelle MacKenzie (MacKenzie) argues
that she should have been allowed to introduce into evidence certain prior charges
and criminal convictions of a driver whose alleged negligence led to her injuries.
On cross-appeal, C&B Logging and Charles Brandon Barr argue that if this court
reverses the circuit court, it should then enter a directed verdict on MacKenzie's

employment-related claims because Barr was acting within the scope of his employment at the time of the accident. We affirm.[1]

## FACTS/PROCEDURAL HISTORY

Charles Brandon Barr (Barr) was driving a company truck for C&B Logging (C&B) on the night of April 23, 2016, when he began wondering if the truck's progressively flattening tire would be able to last until he reached his destination. Deciding not to risk it, Barr stopped near a friend's home, pulling across the road to the left side. Barr testified that he believed the friend could help reinflate the tire, but the friend was not at home.

As Barr was pulling back onto the highway, Arthur Lee Gregg (Gregg)[2] was coming from the opposite direction and about to round a curve a short distance away from Barr. Gregg rounded the curve before Barr could completely cross from the left lane of the highway into the correct lane. Gregg smashed into one of the rig's axles, then skidded to a stop a short distance away.

Following Gregg was MacKenzie, driving her motorcycle. With little time to react, MacKenzie slalomed her motorcycle between the two vehicles and went to the ground. MacKenzie did not hit either truck.[3]

---

[1] Because we affirm the circuit court on MacKenzie's appeal, we do not consider the cross-appeal. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating that the "appellate court need not address remaining issues when disposition of prior issue is dispositive" (citing *Whiteside v. Cherokee Cnty. Sch. Dist. No. One*, 311 S.C. 335, 428 S.E.2d 886 (1993))).

[2] Gregg is identified only as "Mr. Gregg" in the record. His full name was pulled from MacKenzie's brief.

[3] MacKenzie claims in her brief that "[i]t is [MacKenzie's] allegation and the testimony of the independent eye-witness that she then collided with the logging truck operated by Mr. Barr as the logging truck attempted to move into the correct lane." We do not find testimony in the record to support this statement. The witness to which MacKenzie appears to be referring said:

> Mr. Gregg hit the log truck as it was coming across, the
> back axle I believe. You can see in the pictures on the
> floor. He hit the back axle as it was coming across the
> road. The log truck was trying to get into the northbound
> lane as we were traveling southbound. He struck it, his

MacKenzie filed suit against Barr and C&B for negligence on multiple grounds, including that C&B was liable for "negligently hiring, employing and/or retaining in employment . . . Barr," as well as for inadequately supervising and training him.

At trial, MacKenzie attempted to introduce into evidence a laundry list of former moving violations and drug-related charges and convictions against Barr to prove negligent hiring, training, supervision, retention, and entrustment by C&B.[4] MacKenzie argued that the drug-related charges and convictions were admissible on multiple grounds. First, MacKenzie sought to show that Barr did not stop in search of air for his tire, but instead stopped for drug-related purposes.[5] Second, MacKenzie relied on *Green v. Hewett*[6] to argue that the drug-related charges and convictions were admissible because they demonstrated "a breach of duty to society

---

> truck veered to the right, but it somewhat came to a stop.
> And [MacKenzie] had to swerve between them, between
> the log truck and the pickup truck.

For her part, MacKenzie's testimony during cross-examination included this exchange:

> Q: So everything you know about the accident was told
> to you?
> A: Correct.
> Q: How did you know there was a truck involved?
> A: I was told.

[4] Among the drug-related evidence that MacKenzie attempted to admit were: a 2011 indictment for possession with intent to distribute cocaine base (for an offense from 2010); a 2012 indictment for conspiracy (same offense date as the 2011 indictment); a 2013 indictment for possession with intent to distribute marijuana; a guilty plea to criminal conspiracy as a result of the 2012 indictment; and a guilty plea to possession of a controlled substance as a result of the 2013 indictment.

[5] MacKenzie told the court: "And in this case, it's our allegation that the stop was a result of drug seeking." Because of the circuit court's rulings, we have little more than comments from counsel to indicate what evidence might have supported that theory. For its part, the circuit court indicated it found counsel's arguments on this point speculative.

[6] 305 S.C. 238, 407 S.E.2d 651 (1991).

as a whole"[7] and "a history of bad decision making" relevant to whether C&B acted negligently in employing Barr. Finally, MacKenzie contended the charges and convictions themselves could be used for impeachment purposes if Barr lied about the convictions on the stand.[8]

Barr and C&B argued that the charges and convictions related to drug possession were substantially more prejudicial than probative. The circuit court ruled that MacKenzie could introduce the traffic violations, but excluded the drug-related charges and convictions. The circuit court "d[id] not believe that they [were] probative, and any probative value [was] certainly outweighed by the potential prejudicial effect in this case."

The jury found in favor of MacKenzie and awarded her $179,678.49 in actual damages. The jury also apportioned the blame between Barr and C&B, holding Barr liable for sixty percent of the damages and the company liable for the remaining forty percent. The jury did not award punitive damages to MacKenzie. These cross-appeals followed.

## ISSUE ON APPEAL

Did the circuit court err in declining to admit evidence of Barr's drug-related charges and convictions for the purposes of the negligent hiring and retention claim and the request for punitive damages against C&B?

## STANDARD OF REVIEW

An appellate court's review of the circuit court's admission or exclusion of potentially relevant evidence is considered under a deferential standard.

> The court's ruling to admit or exclude evidence will only be reversed if it constitutes an abuse of discretion

---

[7] This language closely mirrors that of the *Green* court, which was considering "whether the commission of such a crime is egregious enough such that it may be viewed as a breach of respondent's duty to his fellow man and society as a whole." *Id.* at 241, 407 S.E.2d at 652.

[8] MacKenzie also argued in her trial memorandum on the issue that the convictions could be used independently to impeach Barr because they were "crimes of moral turpitude." However, she appeared to not advance that argument at trial, and the circuit court said "[i]t's been argued throughout that this is not for purposes of impeachment."

amounting to an error of law. . . . The trial court's decision will not be reversed on appeal unless it appears the trial court clearly abused its discretion and the objecting party was prejudiced by the decision.

*Proctor v. Dep't of Health & Envtl. Control*, 368 S.C. 279, 313, 628 S.E.2d 496, 514 (Ct. App. 2006) (citations omitted).

## LAW/ANALYSIS

MacKenzie argues that the circuit court erred in excluding portions of Barr's criminal record that MacKenzie asserts supported her employment-related claims against C&B and her request for punitive damages.[9] Specifically, MacKenzie contends that the circuit court was wrong to exclude, under Rule 403, SCRE, evidence of Barr's drug-related charges and convictions. We disagree and find that the circuit court acted within its discretion in ruling as it did.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, SCRE.

According to MacKenzie, because of the circuit court's exclusion of the drug-related charges and convictions, "the jury was [allowed] to hear only part of the story" about Barr's criminal history. MacKenzie notes that the "offenses were not so remote in time, but instead occurred in 2011 and 2012, and during the period in which [Barr] was employed by C&B Logging, LLC." Admitting the convictions, in MacKenzie's view, "could have led to the imposition of punitive damages."

However, allowing only part of the story is precisely the point of Rule 403: If the rest of the story is found by the court to be substantially more unfairly prejudicial than probative, it is to be excluded. *See* Rule 403, SCRE ("*Although relevant*, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." (emphasis added)).

The traffic violations allowed by the circuit court were proper for admission because the jury could view them as probative of a reason for caution on C&B's part when it came to employing Barr. *See Doe v. ATC, Inc.*, 367 S.C. 199, 206, 624

---

[9] Appellant prevailed on the issue of liability below, but is nonetheless asking for a new trial.

S.E.2d 447, 450 (Ct. App. 2005) ("Our review of negligent hiring and retention cases from other jurisdictions leads us to conclude that such cases generally turn on two fundamental elements—knowledge of the employer and foreseeability of harm to third parties. . . . From a practical standpoint, these elements are analyzed in terms of the number and nature of prior acts of wrongdoing by the employee, and *the nexus or similarity between the prior acts and the ultimate harm caused*." (emphasis added) (citation omitted)). Clearly, an employer could anticipate that someone who had previously improperly operated a motor vehicle could potentially cause harm when operating a motor vehicle in the scope of his employment.

However, the same is not true of the drug-related charges and convictions. As the circuit court found, the probative value of the evidence of Barr's drug-related charges and convictions was virtually non-existent. For example, none of the charges or convictions MacKenzie sought to introduce involved operating a motor vehicle while under the influence of drugs or alcohol.[10] Furthermore, even if they had, a trooper at the scene of the accident testified that he had no reason to believe that Barr was under the influence of drugs or alcohol at the time of the incident. Simply showing that Barr had a criminal record is not sufficient to admit the evidence without some showing that it was related to the ultimate issue in the case that is now on appeal—namely, whether C&B's decision to hire and retain Barr justified an award of punitive damages to MacKenzie.

The issue was not why Barr pulled over to the side of the road, but his conduct as and after he did so—and whether C&B was negligent for the purposes of actual damages, and more culpable for the purposes of punitive damages, in employing him based on the risk that he would not operate his truck properly. *See Doe*, 367 S.C. at 206, 624 S.E.2d at 450 ("Our review of negligent hiring and retention cases from other jurisdictions leads us to conclude that such cases generally turn on two fundamental elements—knowledge of the employer and foreseeability of harm to third parties. . . . From a practical standpoint, these elements are analyzed in terms of the number and nature of prior acts of wrongdoing by the employee, and *the nexus*

---

[10] Two of the incidents did involve drugs being found in Barr's vehicle, and one was subsequent to a traffic stop. But neither arrest warrant states that Barr was under the influence of any substance at the time. It does appear from the record that Barr might have been charged with driving under the influence at another point. During proffered testimony, MacKenzie's counsel asked: "So you believe that you have been charged with driving under the influence only one time?" Barr replied: "Yes, sir." Based on the record and the briefs of the parties, that charge is not at issue in this appeal.

*or similarity between the prior acts and the ultimate harm caused*." (emphasis added) (citation omitted)). And because the drug convictions lacked probative value on the underlying claim of negligent employment, they held no probative value as to punitive damages for the employment-related claims.

Barr's previous drug charges and convictions do not indicate that C&B showed a reckless disregard for MacKenzie's rights, because there was nothing about them that indicated an increased likelihood that Barr would not follow safety procedures in pulling to the side of the road. On the other hand, the unfairly prejudicial nature of the allegation that Barr had previously possessed narcotics, and the suggestion that he might have stopped on the side of the road to obtain the same, is self-evident when it comes to whether jurors might have improperly considered it in imposing punitive damages.

MacKenzie's attempt to create a ground for admitting this evidence by pointing to language in *Green v. Hewett* does not change that. In *Green*, our supreme court ruled that the respondent's previous conviction for participation in a drug conspiracy was a "crime of moral turpitude" that should have been admitted against the respondent under the common law rule about impeachment then in effect. *Green v. Hewett*, 305 S.C. 238, 240–42, 407 S.E.2d 651, 652–53 (1991). Green, who had been injured in an automobile accident, sued Hewett. At trial, the circuit court barred Green from using a federal conviction for a drug conspiracy to impeach Hewett's credibility. *Id.* at 240, 407 S.E.2d at 651–52.

On appeal, the *Green* court found that "commission of such a crime is egregious enough such that it may be viewed as a breach of respondent's duty to his fellow man and society as a whole." *Id.* at 241, 407 S.E.2d at 652. Importantly, the court also noted that the "respondent's credibility as a witness was pivotal in this case." *Id.* at 242, 407 S.E.2d at 653.

MacKenzie argues that the court's finding that a drug conspiracy offense is "egregious enough such that it may be viewed as a breach of respondent's duty to his fellow man and society as a whole," *id.* at 241, 407 S.E.2d at 652, can be translated into a statement that such crimes "harm[] not only the public (as is required to prove a claim of negligent hiring, supervision, or training), but harm[] society as a whole." For that reason, MacKenzie contends, Barr's drug charges and convictions are substantially probative of MacKenzie's claim for punitive damages.

However, despite MacKenzie's protests to the contrary, the issue in *Green* was simply whether a drug conspiracy crime was admissible as a crime of moral turpitude for impeachment purposes. All of the language MacKenzie highlights from the

decision must be viewed through the prism of what the court was deciding. And even the *Green* court suggested that there were limits on the use of such evidence. "Convictions for crimes of moral turpitude are admissible to impeach the credibility of a witness when the [circuit court], in [its] discretion, determines the conviction is not too remote in time *and that the probative value of the conviction outweighs its prejudicial impact*." *Id.* at 242, 407 S.E.2d at 653; *see also id.* ("[T]he probative value of the conviction *on the issue of credibility* far outweighed any prejudicial impact on respondent.").

The *Green* court's consideration of whether the crime was a crime of moral turpitude had nothing to do with what evidence may be introduced to prove a negligent hiring claim or support a request for resulting punitive damages. And that definition no longer has any relevance under South Carolina law when it comes to the admission of prior bad acts. *See State v. Black*, 400 S.C. 10, 23 n.5, 732 S.E.2d 880, 888 n.5 (2012) ("This [c]ourt has stated that the moral turpitude test is no longer relevant under a Rule 609 analysis."); *but see generally Baddourah v. McMaster*, 433 S.C. 89, 856 S.E.2d 561 (2021) (analyzing "crime of moral turpitude" in relation to suspension from office).

We have found no authority, and MacKenzie has cited none, suggesting that "crimes of moral turpitude" under any name have any relationship to whether C&B was negligent in the employment claims, or whether MacKenzie was entitled to punitive damages. *See Doe*, 367 S.C. at 206, 624 S.E.2d at 450 ("Our review of negligent hiring and retention cases from other jurisdictions leads us to conclude that such cases generally turn on two fundamental elements—knowledge of the employer and foreseeability of harm to third parties. . . . From a practical standpoint, these elements are analyzed in terms of the number and nature of prior acts of wrongdoing by the employee, and *the nexus or similarity between the prior acts and the ultimate harm caused*." (emphasis added) (citation omitted)); *Hundley ex rel. Hundley v. Rite Aid of S.C., Inc.*, 339 S.C. 285, 311, 529 S.E.2d 45, 59 (Ct. App. 2000) ("In order to receive an award of punitive damages, the plaintiff has the burden of proving by clear and convincing evidence the defendant's misconduct was willful, wanton, or in reckless disregard of the plaintiff's rights." (quoting *Lister v. NationsBank, of Delaware, N.A.,* 329 S.C. 133, 150, 494 S.E.2d 449, 458 (Ct. App. 1997)).

In relation to her claims about the "moral turpitude standard," MacKenzie argued to this court at oral argument that the evidentiary law in South Carolina before Rule 609[11] became effective remains unchanged by the rule, relying largely

---

[11] Rule 609 of the South Carolina Rules of Evidence states, in part:

on the fact that the reporter's note to the rule includes a citation to *Green*.[12]  This is contrary to what the rule and its accompanying reporter's note say: "Subsection (a) ***does*** change the law in South Carolina."  (Emphasis added.)  Also, while the note to Rule 609 cites *Green v. Hewett* multiple times in references to Rule 609(a) and (b), it does so to *lay out the former law that the rule is changing*.  *See* Note on Rule 609, SCRE ("[T]he standard for balancing probative value against prejudicial effect *was* the same for all witnesses, to include the accused in a criminal case.  *Green v. Hewett*, 305 S.C. 238, 407 S.E.2d 651 (1991). *This subsection does not use the moral turpitude standard*, but *instead* allows impeachment with a conviction for any crime which carries a maximum sentence of death or imprisonment for more than one year.  Further, the rule provides for a different standard for balancing probative value and prejudicial effect for an accused who is a witness." (emphases added)); *id.* ("The *former case law* did not set forth a time limit on the use of convictions for impeachment. *Green v. Hewett, supra*. . . .  The ten year limit was adopted to help

For the purpose of attacking the credibility of a witness,

(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and

(2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

[12] MacKenzie faults the circuit court for an interpretation of *Green* that is similar to ours.  Notably, MacKenzie argues that "whether or not Mr. Barr lied about his driving history was wholly immaterial to the fact that C&B Logging, LLC had a duty to the public to ensure its vehicles were operated in a safe manner by drivers that did not pose a threat to the public."  Indeed, MacKenzie's brief before this court does not cite Rule 609.  We address the issue here only to the extent necessary to address MacKenzie's oral arguments before this court and because MacKenzie did raise the issue below.

guide trial courts in making uniform determinations in this area." (emphasis added)); *see also Black*, 400 S.C. at 23 n.5, 732 S.E.2d at 888 n.5 ("This [c]ourt has stated that *the moral turpitude test is no longer relevant* under a Rule 609 analysis." (emphasis added)).

First, setting aside the need to perform a Rule 403 balancing test regarding the drug evidence, not all of Appellant's evidence would have cleared even the initial threshold under Rule 609(a)(1) because that evidence either dealt with charges rather than convictions or did not fulfill the rule's requirement that the conviction be "punishable by death or imprisonment *in excess of one year* under the law under which the witness was convicted . . . ." Rule 609(a)(1), SCRE (emphasis added).[13]

Further, Rule 609(a)(1) *does* require a Rule 403 balancing test, and in performing the Rule 403 balancing test, the circuit court considered whether the probative value of Barr's previous convictions was "substantially outweighed by the danger of unfair prejudice." *See* Rule 403, SCRE. This is the balancing test required by the Rule 609(a)(1): "[E]vidence that a witness other than an accused has been convicted of a crime shall be admitted, *subject to Rule 403*, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted . . ." (emphasis added).

The circuit court found that "I do not believe that [the drug-related convictions] are probative, and any probative value is certainly outweighed by the potential prejudicial effect in this case." While the circuit court did not specifically use the term "substantially outweighed," the court found that the drug-related convictions had *no probative value*, meaning that virtually any unfair prejudice from the evidence would substantially outweigh its probative value. *Cf. State v. King*, 349 S.C. 142, 156–57, 561 S.E.2d 640, 647 (Ct. App. 2002) (upholding a "compressed Rule 403/404(b) analysis" that did not specifically outline the standard); *id.* at 156, 561 S.E.2d at 647 ("Though an on-the-record Rule 403 analysis is required, this [c]ourt will not reverse the conviction if the trial judge's comments concerning the matter indicate he was cognizant of the evidentiary rule when admitting the evidence of . . . prior bad acts.").

Nor would Barr's offenses have qualified under the other prong of Rule 609(a), which concerns crimes of dishonesty. *See* Rule 609(a)(2) ("[E]vidence that

---

[13] Specifically, while two different code sections appear on the 2014 sentence sheet, in context it appears that Barr pleaded guilty to section 44-53-370(d)(2). The maximum sentence for a first offense is a sentence of "not more than six months." S.C. Code Ann. § 44-53-370(d)(2) (2018).

any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.").

Our supreme court held in *State v. Broadnax* that "for impeachment purposes, crimes of 'dishonesty or false statement' are crimes in the nature of *crimen falsi* 'that bear upon a witness's propensity to testify truthfully.'" 414 S.C. 468, 476, 779 S.E.2d 789, 793 (2015) (quoting *Adams v. State*, 644 S.E.2d 426, 431–32 (Ga. Ct. App. 2007)), *remanded on other grounds*, 418 S.C. 227 (2015). The court cited with approval an explanation of the federal counterpart to Rule 609(a)(2) that included in the phrase "crimes involving dishonesty or false statement" the following: "crimes such as perjury, subornation of perjury, false statements, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of *crimen falsi,* the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully." *Id.* at 476–77, 779 S.E.2d at 793 (quoting Stuart P. Green, *Deceit and the Classification of Crimes: Federal Rule of Evidence 609(a)(2) and the Origins of* Crimen Falsi, 90 J. CRIM. L. & CRIMINOLOGY 1087, 1090–91 (2000)).[14]

In that vein, our supreme court has repeatedly held that drug convictions generally are not admissible under 609(a)(2). *Green v. State*, 338 S.C. 428, 432 n.3, 527 S.E.2d 98, 100 n.3 (2000) ("Conviction of a crime involving dishonesty or false statement is always admissible for impeachment purposes, regardless of the punishment. Narcotics convictions generally do not fall under this rule." (citation omitted)); *State v. Bryant*, 369 S.C. 511, 517, 633 S.E.2d 152, 155 (2006) ("Violations of narcotics laws are generally not probative of truthfulness."); *State v. Cheeseboro*, 346 S.C. 526, 543, 552 S.E.2d 300, 309 (2001) (same proposition).

Finally, Appellant appears to contend that our supreme court's ruling in *James v. Kelly Trucking Co.* shows the court was unconcerned about the potential admission of evidence like the criminal convictions at issue in the current case. 377 S.C. 628, 661 S.E.2d 329 (2008). That assertion misses the mark. In *James*, our supreme court ruled, in response to a federal court's question, "that South Carolina law does not prohibit a plaintiff from pursuing a negligent hiring, training, supervision, or entrustment claim once respondeat superior liability has been admitted . . . ." *Id.* at 634, 661 S.E.2d at 332. The defendant had contended that

> the admission of evidence which must be offered to prove
> a negligent hiring, training, supervision, or entrustment

---

[14] As noted by our supreme court in *Broadnax*, Green's article in turn quoted this passage (with slight discrepancies) from H.R. Conf. Rep. No. 93-1597, at 9 (1974).

claim—evidence such as a prior driving record, an arrest record, or other records of past mishaps or misbehavior by the employee—will be highly prejudicial if combined with a stipulation by the employer that it will ultimately be vicariously liable for the employee's negligent acts.

*Id.* at 632, 661 S.E.2d at 331. But the court found that such concerns could be addressed through less restrictive means than cutting off the negligent employment claims. *Id.* at 632–33, 661 S.E.2d at 331.

Nothing in *James* suggests that the coexistence of a *respondeat superior* claim and a negligent hiring claim somehow negates the applicability of Rule 403. In fact, one of the reasons the *James* court found that those claims could coexist was *because of* Rule 403. *See id.* at 632, 662 S.E.2d at 331 ("Primarily, we think the argument that an independent cause of action against an employer must be precluded to protect the jury from considering prejudicial evidence presumes too much. Our court system *relies on the trial court to determine when relevant evidence is inadmissible because its probative value is substantially outweighed by the danger of unfair prejudice*, confusion of the issues, or misleading the jury. *Rule 403, SCRE*." (emphases added)). The circuit court in this case properly conducted that balancing test and found the evidence was not admissible. As we have already noted, we agree with that decision.

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is

**AFFIRMED.**

**WILLIAMS, C.J., and HUFF, A.J., concur.**